**VDI TECHNOLOGIES**

v.

**James PRICE, d/b/a PDM Business Products, Sudbury Systems, Inc.**

v.

**Stephen DUNKLE.**

**Civ. No. 90–341–D.**

United States District Court,
D. New Hampshire.

Dec. 19, 1991.

Steven J. Grossman, Manchester, N.H., Gary W. Holmes, Hampton, N.H., for plaintiff and Stephen Dunkle.

E. Donald Dufresne, Manchester, N.H., Thomas C. O'Konski, David J. Thibodeau, Boston, Mass., for defendant.

## ORDER

DEVINE, Chief Judge.

In this action plaintiff seeks declaratory judgment and damages on claims of patent invalidity and non-infringement. Additionally, plaintiff seeks damages on a state claim of unfair competition and for violations of federal antitrust laws. Jurisdiction is grounded on the jurisdictional statute relating to patents, 28 U.S.C. § 1338; the doctrine of pendent jurisdiction; and 28 U.S.C. § 1332.

Plaintiff VDI Technologies, a New Hampshire corporation with its principal place of business in Hampton, New Hampshire, manufactures and sells random access digital dictation systems. Defendant Sudbury Systems, Inc., a Massachusetts corporation, is the owner of U.S. Letters Patent No. 4,260,854 (" '854 patent"), which is central to this dispute. Defendant James Price,[1] an Arizona resident, is president of Phoenix Dictating Machine Company; Inc., an Arizona corporation which also does business as PDM Business Products. PDM sells digital dictating equipment manufactured, *inter alia*, by co-defendant Sudbury. Counterclaim defendant Stephen Dunkle is president of VDI.

Presently before the court is defendant's motion to dismiss as to defendants Price and PDM (hereinafter "defendant's motion")[2] pursuant to Rules 12(b)(2) (lack of personal jurisdiction) and 12(b)(3) (improper

---

1. Price corrects the record to reflect that his proper legal name is Jim S. Price, Jr. *See* Corrected Second Declaration of Jim S. Price, Jr.

2. In spite of the fact that the within motion to dismiss and all other relevant submissions are written and argued by both sides in the plural, acknowledging Price and PDM as separate defendants, the court finds but one. This conclusion is based upon the caption of VDI's complaint, which identifies only two defendants: "James Price d/b/a PDM Business Products" and "Sudbury Systems, Inc.", and the record, which reveals (irrespective of Sudbury) that service of process was made only once, upon "James Price d/b/a PDM Business Products". *See* Summons, Return of Service (document no. 10). This view is also consistent with the arguments on both sides that it is New Hampshire's long-arm statute for nonresident individuals which applies to the case at bar. New Hampshire Revised Statutes Annotated (RSA) 510:4 I. While apparently arguing that PDM was a corporate defendant, neither side cited to or relied upon New Hampshire's relevant corporate long-arm statute, RSA 293–A:121. Whatever the basis of either the confusion or the inexactitude within the record, the court proceeds to treat the motion before it as made solely by Price individually.

venue), Fed.R.Civ.P. Also before the court is VDI's Motion for Allowance of Attorneys' Fees and Expenses Pursuant to Rule 11 (hereinafter "sanction motion").

### I. Background

Review of the facts in this case will be limited to those necessary to properly illuminate the relevant issues to be decided herein.[3] Involved in this controversy are the conduct and claims of two competitors in the field of random access digital dictation systems: VDI and Sudbury. Plaintiff VDI characterizes itself as a small start-up company, commencing business only about two years ago, and portrays Sudbury as a ten-year-old business with $7–9 million in annual revenue. Also embroiled in the conflict are Price and PDM as manufacturing representatives and sales agents for Sudbury.

The crux of this case is an ongoing dispute with regard to the validity and scope of defendant Sudbury's '854 patent and whether a VDI product infringes any valid claim of this patent. VDI's position is that the '854 patent is invalid, unenforceable, and/or void for a variety of reasons;[4] that VDI has not infringed any claim of the '854 patent; and that if valid at all, the patent is so limited that its "claims ... as finally allowed cannot be interpreted to read upon or include any product ... made, used ... [or] sold ... by VDI." Complaint at 3–4, ¶ 11. Defendant Sudbury counterclaims for patent infringement and for common law and statutory unfair competition. Answer and Counterclaims of Defendant Sudbury Systems, Inc., at 3–7, ¶¶ 24, 41, 44. Price seeks dismissal, challenging personal jurisdiction and venue in this district. Accordingly, as is typical when both of these personal privileges are raised by a defendant, the court turns to the question of personal jurisdiction in advance of venue. *Leroy v. Great Western United Corp.*, 443 U.S. 173, 180, 99 S.Ct. 2710, 2714–15, 61 L.Ed.2d 464 (1979) (citations omitted).

### II. Personal Jurisdiction

It is settled law that when a court's personal jurisdiction over a defendant is contested, plaintiff has the burden of showing that such jurisdiction exists. *Ealing Corp. v. Harrods, Ltd.*, 790 F.2d 978, 979 (1st Cir.1986) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936)); *Delta Educ., Inc. v. Langlois*, 719 F.Supp. 42, 47 (D.N.H.1989) (and cases therein cited); *Lex Computer & Management Corp. v. Eslinger & Pelton, P.C.*, 676 F.Supp. 399, 402 (D.N.H.1987). Where, as here, there has been no evidentiary hearing and the court proceeds upon the written submissions, plaintiff must make only a prima facie showing that jurisdiction exists. *Kowalski v. Doherty, Wallace, Pillsbury & Murphy*, 787 F.2d 7, 8 (1st Cir.1986) (citing 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 12.07[2.–2] (2d ed. 1985); 2 J. Moore, J. Lucas, H. Fink & C. Thompson, *Moore's Federal Practice* ¶ 4.41–1[3] (2d ed. 1985)). While a plaintiff's written allegations of jurisdictional facts are construed in its favor, *Kowalski, supra*, 787 F.2d at 9, its showing of personal jurisdiction must be based on specific facts set forth in the record in order to defeat a defendant's motion to dismiss. *Id.* In reviewing the record before it, a court "may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment." *Lex Computer, supra*, 676 F.Supp. at 402 (citation omit-

---

**3.** For a detailed recitation of the facts of this case, *see* Report and Recommendation of magistrate judge dated May 24, 1991, accepted and approved by the court on June 28, 1991.

**4.** Under 35 U.S.C. §§ 102(a), (b), (f), (g), and 103, plaintiff essentially claims that applicants of the '854 patent did not invent the subject matter sought to be patented, that the alleged invention was known or used in this country or patented or described in a printed publication before the alleged invention by applicants, or

was in public use or on sale in this country more than one year prior to the date of application for the '854 patent, and that the invention was made in this country by another who had not abandoned, suppressed, or concealed it. Plaintiff's Complaint at 3–4, ¶ 11. Additionally, VDI contends that its products are based on a computer described in *Proceedings of 24th National Conference*, ACM, at 477–84 (1969). Affidavit of Stephen H. Dunkle at 2, ¶ 4.

ted); *Omni Hotels Mgmt. Corp. v. Round Hill Dev. Ltd.*, 675 F.Supp. 745, 748 (D.N.H.1987) (and cases therein cited). *See also* C. Wright & A. Miller, 5A *Federal Practice and Procedure: Civil 2d* § 1364 (1990). Thus, the relevant facts derived from the pleadings and affidavits as to defendant Price are as follows.

The gravamen of VDI's conflict with Price is conduct by Price, acting through PDM, whereby "on several occasions ... in 1990" Price forwarded a copy of a May 12, 1990, letter by one Robert M. Hart, president of defendant Sudbury, together with his own cover letter on PDM letterhead, to plaintiff's customers or prospective customers. Plaintiff's Memorandum in Opposition to Motion to Dismiss as to Defendants James Price and PDM Business Products ("Plaintiff's Opp. Memo.") at 2. *See also* Affidavit of James Price ("Price Affidavit"), Exhibit A (copy of Hart's letter) and Exhibit B (an example of Price's forwarding letter) which accompany defendant's motion. VDI alleges that Price not only sent these letters, but also specifically emphasized, by underlining, that portion of the Hart letter intended to threaten "purchasers of an infringing product" with a patent infringement suit. Plaintiff's Opp. Memo at 2. *See also* Price Affidavit, Exhibit A. Moreover, plaintiff alleges that the characterization in Price's cover letter of VDI's product as a "BETA installation" was made in an attempt to suggest to VDI's customers that its product was an experimental one, Plaintiff's Opp.Memo at 2; *see also* Price Affidavit, Exhibit B, "thereby further dissuading Plaintiff's customers from purchasing Plaintiff's products." [5] Plaintiff's Memo re Injunction at 1.

VDI claims that this "tortious conduct was aimed *solely* at a New Hampshire corporation," Plaintiff's Surreply in Opposition to Defendant's Motion to Dismiss (hereinafter "Plaintiff's Surreply") at 6–7 (emphasis in original), and that "it is impossible for ... James Price *not* to have known that the letters sent to VDI's customers and prospective customers would have had a direct and *deliberate* effect on VDI's business in New Hampshire." *Id.* at 6 (emphasis in original). As a result of this alleged tortious conduct, plaintiff claims injury to its business and property in New Hampshire. Complaint at 5–6, ¶¶ 14, 18. Price admits sending the "complained-of letter to certain persons in California," along with the cover letter containing the remark about a "Beta installation by VDI." Second Price Declaration at 4, ¶¶ 23–26. However, Price argues that "any alleged injury to VDI occurred in California, to its potential market there, and not in New Hampshire." Defendant's Reply Memorandum in Support of Their Motion to Dismiss (hereinafter Defendants' Reply Memo) at 13.

When determining whether jurisdictional requirements have been met, the court must look to state law. *Ealing Corp., supra*, 790 F.2d at 981 (citations omitted). Thus, in New Hampshire the court must engage in a two-part inquiry and may assert *in personam* jurisdiction over defendant only if plaintiff shows that defendant is subject to the applicable New Hampshire long-arm statute and that assertion of jurisdiction is consistent with the due process mandate of the United States Constitution. *Hugel v. McNell*, 886 F.2d 1, 3 (1st Cir. 1989), *cert. denied*, 494 U.S. 1079, 110 S.Ct. 1808, 108 L.Ed.2d 939 (1990); *Kowalski, supra*, 787 F.2d at 9–10; *Lex Computer, supra*, 676 F.Supp. at 402 (citations omitted); *Phelps v. Kingston*, 130 N.H. 166, 170, 536 A.2d 740, 741–42 (1987) (and cases therein cited). If personal jurisdiction under the applicable statute cannot be asserted over defendant, the inquiry need go no further. *Hugel, supra*, 886 F.2d at 3; *Kowalski, supra*, 787 F.2d at 10 (quoting *Cove–Craft Indus., Inc. v. B.L. Armstrong Co.*, 120 N.H. 195, 198, 412 A.2d 1028, 1030 (1980)); *Lex Computer, supra*, 676 F.Supp. at 402.

### A. Under the Statute

■ When considering the assertion of long-arm jurisdiction over a nonresident in-

---

**5.** In rebuttal of the inference that its product was at the experimental stage of development, VDI claims to have been advertising and delivering fully tested and finished products by May 1, 1990. *See* Dunkle Affidavit at 2, ¶ 5.

dividual in New Hampshire, the applicable statutory authority is found in RSA 510:4 I, which provides in pertinent part that

[a]ny person who is not an inhabitant of this state and who, in person or through an agent, transacts any business within this state, commits a tortious act within this state, or has the ownership, use, or possession of any real or personal property situated in this state submits himself, or his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from or growing out of the acts enumerated above.

This statute has been construed by the New Hampshire Supreme Court "to provide jurisdiction over foreign defendants to the full extent that the statutory language and due process will allow." *Phelps, supra,* 130 N.H. at 171, 536 A.2d at 742 (and cases therein cited). As the claims in this case are confined to the allegations of tortious conduct only, the court will appropriately restrict its analysis, not entertaining the other allowable statutory grounds.[6] Accordingly, the dispositive issue is whether Price "commit[ted] a tortious act within this state," as that statutory phrase has been interpreted.

It is undisputed that the actual allegedly tortious acts of Price did not occur in New Hampshire. The edited Hart letter and accompanying cover letter were not sent from New Hampshire nor to anyone in New Hampshire. Price personally, although apparently acting through PDM, authored and/or sent the complained-of letters to prospective California customers. *See* Complaint at 2–3, 4; Defendant's Motion at 4; Price Affidavit at 3, ¶ 16 and Exhibits A and B; Corrected Price Affidavit at 4, ¶ 25. Price denies ever having sent such letters to anyone in New Hampshire, Defendants' Motion at 4; Price Affidavit at 3, ¶ 17, but plaintiff does not make that allegation.

Price, as an initial matter, argues that under these facts, his conduct does not fall within the literal language of the statute. Inconsistently, however, Price concedes that in New Hampshire a plaintiff satisfies the statutory tort requirement "if the resulting alleged injury is felt by a New Hampshire Corporation." Defendant's Motion at 7. Thus, Price, while defending his conduct, argues that even if his behavior was tortious and there was a resulting injury to VDI, that injury necessarily occurred in the market area receiving these letters; namely, California. VDI contends that injury alone to its "business and property in New Hampshire" is sufficient to meet the statutory prong of the jurisdictional inquiry. The court agrees.

"It is settled New Hampshire law that a party commits, for jurisdictional purposes, a tortious act within the state when injury occurs in New Hampshire even if the injury is the result of acts outside the state." *Hugel, supra,* 886 F.2d at 3 (citations omitted) (defendant's tortious acts took place physically outside state, but long-arm statute found to apply because complaint alleged resulting injury to plaintiff's business reputation within New Hampshire). However, the New Hampshire Supreme Court has required that the impact in New Hampshire of a defendant's out-of-state conduct must be more than fortuitous, so that the defendant knew or should have known his conduct could injure a person here. *Buckley, supra,* 682 F.Supp. at 99 (citing *Estabrook v. Wetmore,* 129 N.H. 520, 523, 529 A.2d 956, 958 (1987)). In *Buckley,* the court found that certain nonresident defendants were not subject to long-arm jurisdiction as plaintiff had not alleged that the impact of defendants' conduct was in New Hampshire, and even if plaintiff had sustained such an injury, the court found that it could only have been considered fortuitous. *Buckley, supra,* 682 F.Supp. at 99. By way of contrast, the New Hampshire court in *Phelps,* a malpractice suit, found defendant to be subject to personal jurisdiction under RSA 510:4 I, where the acts allegedly constituting the tort arguably all occurred out of state,

**6.** "Jurisdiction vests if any of the three acts enumerated in the statute are present." *Buckley v. Bourdon,* 682 F.Supp. 95, 98 (D.N.H.1988)

(citing *Kinchla v. Baumner,* 114 N.H. 818, 330 A.2d 112 (1974)); *Lex Computer, supra,* 676 F.Supp. at 402.

while the damage or injury for which plaintiff sought recovery apparently occurred predominantly in New Hampshire. *Phelps, supra,* 130 N.H. at 172–73, 536 A.2d at 743.

If, as here, "the harm alleged is harm to plaintiff's property and business economy" and "plaintiff's principal place of business is in New Hampshire," then the alleged injury has occurred in New Hampshire for purposes of the statute. *Concord Labs, Inc. v. Ballard Medical Products,* 701 F.Supp. 272, 275 (D.N.H.1988). *Accord Lex Computer, supra,* 676 F.Supp. at 403 (if loss occurred in New Hampshire, injury occurred there). In so concluding, *Concord Labs* relied on the "impact" rule enunciated in *Lex Computer* which subjects a defendant to personal jurisdiction " 'when the impact in New Hampshire of the defendant's out of state conduct has allegedly resulted in a New Hampshire tort and was more than fortuitous, so that the defendant knew or should have known his conduct could injure a person here.' " *Concord Labs, supra,* 701 F.Supp. at 275 (quoting *Lex Computer, supra,* 676 F.Supp. at 403). A similar result was reached in *Velcro Group Corp. v. Billarant,* 692 F.Supp. 1443 (D.N.H.1988), where, as here, plaintiff alleged that a corporate defendant "deliberately set about to disaffect [plaintiff's] customers" by making threats of possible patent infringement. Plaintiff claimed harm to its business relations and made allegations of, *inter alia,* unfair methods of competition. The *Velcro* court concluded that "[n]owhere can the impact of the alleged harm be felt more directly than in New Hampshire [plaintiff's] principal place of business." *Velcro, supra,* 692 F.Supp. at 1447.[7]

The court thus finds, after considering the facts in a light most favorable to plaintiffs, that letters from Price which alleg-

edly "impugn Plaintiff's product," Plaintiff's Opp.Memo at 4, if shown to have the effect of "driving away Plaintiff's customers and threaten[ing] to completely destroy Plaintiff's commercial goodwill and very livelihood," *id.,* have caused injuries to VDI in New Hampshire, its only location.

VDI has met its burden of showing that Price is amenable to jurisdiction under RSA 510:4 I and that the impact of Price's out-of-state conduct was indeed more than fortuitous. The court concludes that defendant knew or should have known that "damaging willful statements by ... including particularly James Price ... [with] threats made to VDI's customers, and Price's characterization of Plaintiff's product as 'a BETA installation,' " Plaintiff's Opp.Memo at 4, would more than likely injure plaintiff's business. Nowhere could the impact of the alleged harm be felt any more than in New Hampshire.

### B. Due Process

■ Having satisfied the statutory prong of this inquiry, the court proceeds to the constitutional analysis. As a threshold requirement when subjecting a nonresident defendant to personal jurisdiction under a state statute, there must be enough minimum contacts between the defendant and the forum state to avoid offending traditional notions of fair play and substantial justice. *Glater v. Eli Lilly & Co.,* 744 F.2d 213, 215 (1st Cir.1984) (citing *International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), and *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342–43, 85 L.Ed. 278 (1940)).

> Whether a defendant's activities in the forum state are sufficient to support personal jurisdiction in a particular case depends on

7. While these district court cases are distinguishable from the case at bar in some respects, none of the distinctions are dispositive. For example, in at least *Concord Labs* and *Lex Computer,* defendant sent a notice-of-infringement letter to a plaintiff in New Hampshire, while VDI makes no such claim. However, perhaps more importantly, in all of these cases, as in the case at bar, plaintiffs also alleged tortious conduct occurring outside of New Hampshire in

that their respective customers were "informed" by a defendant of possible infringement. Accordingly, in all cases, the crux of the analysis was the location of the alleged injury suffered. *See Concord Labs, supra,* 701 F.Supp. at 274–75; *Velcro, supra,* 692 F.Supp. at 1445–47; *Lex Computer, supra,* 676 F.Supp. at 401–03. The court also notes that in these cases, even as to corporate defendants, the long-arm inquiry was made pursuant to RSA 510:4 I.

the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations.

*Id.* (quoting *International Shoe, supra,* 326 U.S. at 319, 66 S.Ct. at 159–60).

In the case at bar, when considering defendant's judicially cognizable ties to the forum state, the court is concerned with the realm of specific jurisdiction,[8] as VDI's suit stems from the alleged tort committed by Price in New Hampshire. Accordingly, the court's analysis will focus solely on Price's minimum contacts with this forum because they could suffice in and of themselves for specific jurisdiction under *International Shoe. Donatelli, supra,* 893 F.2d at 463 (citing *Glater, supra,* 744 F.2d at 216).[9] Critical then is the relationship here among Price, New Hampshire, and VDI's suit in determining whether Price should have "reasonably anticipated being haled into court" here. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

Price initially argues that he has no contacts with VDI or the forum state: he never conducted business with anyone in New Hampshire, the complained-of letters were never sent to New Hampshire, and he never made a purposeful attempt to serve the New Hampshire market. Defendants' Motion at 8–9. Additionally, he argues that his out-of-state activity presents "at the very most only tenuous, and indirect contact," insufficient to support personal jurisdiction here. Defendant's Reply Memo at 2. As to any possible injury to VDI, Price argues it was confined to California. *Id.* at 10.

VDI argues that under the "effects test" approved by the Supreme Court in *Calder,* jurisdiction may be properly based upon an alleged wrongdoing intentionally directed at a resident in another state. *See Calder, supra,* 465 U.S. at 787 n. 6, 104 S.Ct. at 1485 n. 6 (expressing its approval of the "effects test", the Court found it unnecessary to reach an alternative argument that petitioner's investigative activities—a visit and phone calls to the forum state—also provided a basis for jurisdiction). In *Calder,* a newspaper reporter and editor were subjected to personal jurisdiction in the forum state in a libel action arising out of an article they respectively wrote and edited out of state. The Supreme Court held that personal jurisdiction over the defendants was proper because (1) their intentional actions were aimed at the forum state, (2) they knew their article libeling plaintiff was likely to have a devastating impact on plaintiff, and (3) they knew the brunt of the

---

**8.** If "the cause of action arises out of or is related to the defendant's contacts with the forum state ..., then 'specific jurisdiction' may be found based on the relationship among the defendant, the forum, and the litigation." *Glater, supra,* 744 F.2d at 215 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 & n. 8, 104 S.Ct. 1868, 1872 & n. 8, 80 L.Ed.2d 404 (1984) (citing *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579–80, 53 L.Ed.2d 683 (1977))). *See also Calder v. Jones,* 465 U.S. 783, 788, 104 S.Ct. 1482, 1486–87, 79 L.Ed.2d 804 (1984) (as plaintiff was "the focus of the activities of the defendants out of which the suit" arose, the minimum contacts analysis properly focused on the " 'relationship among the defendant, the forum, and the litigation'.") (quoting *Shaffer, supra,* 433 U.S. at 204, 97 S.Ct. at 2580); *Donatelli v. National Hockey League,* 893 F.2d 459, 463 (1st Cir.1990) (specific jurisdiction lacking where plaintiff's claim did not arise out of, and was not directly related to, defendant's contacts with forum state). When, as in *Donatelli,* the cause of action is unrelated to defendant's contacts with the forum state, the issue is one of general, not specific, jurisdiction. *Glater, supra,* 744 F.2d at 216 (citing *Helicopteros, supra,* 466 U.S. at 414 n. 9, 104 S.Ct. at 1872 n. 9).

**9.** The general jurisdiction standard is decidedly more stringent. *Glater, supra,* 744 F.2d at 216. With its two-tier analysis, proper general jurisdiction requires that if minimum contacts exist, numerous other secondary criteria must then be assessed to determine the constitutionality of an exercise of jurisdiction. *Donatelli, supra,* 893 F.2d at 465 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–77, 105 S.Ct. 2174, 2181–85, 85 L.Ed.2d 528 (1985)) (wherein the Court not only re-emphasized historical criteria, but also detailed five other relevant criteria).

injury would be felt by the plaintiffs in the forum state. *Hugel, supra,* 886 F.2d at 4 (citing *Calder, supra,* 465 U.S. at 789–90, 104 S.Ct. at 1486–87). Such can be said about Price under the facts of this case.

VDI's complaint sufficiently alleges that the Price/PDM letter was an intentional act aimed at a New Hampshire corporation. Additionally, the contents of Price's letter, with the underlining of material in the accompanying Hart letter, could not have been construed to have conferred a beneficial or even benign impact on VDI as a competitor in the random access dictation equipment market. If damage could have been done to VDI's business, it is not an unfair inference that the brunt of such injury would surely be felt most at VDI's sole corporate location.

Similar to the situation confronting the *Calder* Court, Price is "not charged with mere untargeted negligence." *Calder, supra,* 465 U.S. at 789, 104 S.Ct. at 1487.

> The knowledge that the major impact of the injury would be felt in the forum State constitutes a purposeful contact or substantial connection whereby the intentional tortfeasor could reasonably expect to be haled into the forum State's courts to defend his actions.

*Hugel, supra,* 886 F.2d at 4 (citing *Calder, supra,* 465 U.S. at 789, 104 S.Ct. at 1487). Price can fairly be charged with such knowledge regarding the effect of his intentional and allegedly tortious actions. Accordingly, the court finds that assertion of *in personam* jurisdiction over Price "satisfies the dictates of due process." *Hugel, supra,* 886 F.2d at 5.

### III. Venue

Venue statutes serve "the purpose of protecting a defendant from the inconvenience of having to defend an action in a trial court that is either remote from the defendant's residence or from the place where the acts underlying the controversy occurred," and they do so by "limiting a plaintiff's choice of forum to only certain courts from among all those which might otherwise acquire personal jurisdiction over the defendant." *VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574, 1576 (Fed.Cir.1990) (citing 1A(2) J. Moore, W. Taggart, A. Vestal, J. Wicker & B. Ringle, *Moore's Federal Practice* ¶ 0.340 (2d ed. 1990)).

In a case with multiple claims, plaintiff has the burden of establishing that venue is proper as to each claim. *Velcro Group, supra,* 692 F.Supp. at 1449; *Concord Labs, supra,* 701 F.Supp. at 277 (citing *Lex Computer, supra,* 676 F.Supp. at 406). VDI must therefore show that venue is proper as to its federal law claims: the declaratory action for patent noninfringement and invalidity and the alleged violation of federal antitrust laws, and its state law claim of unfair competition.

With respect to both federal claims, the general venue statute, 28 U.S.C. § 1391, controls, *VE Holding, supra,* 917 F.2d at 1577, 1583; *Velcro Group, supra,* 692 F.Supp. at 1449, and, as the court has construed the instant motion to involve only Price, section 1391(b)[10] is the appropriate subdivision. Furthermore, section 1391(b) also governs the state law claim. *Concord Labs, supra,* 701 F.Supp. at 278; *Lex Computer, supra,* 676 F.Supp. at 406.

Prior to its 1990 amendment, section 1391(b) provided that "[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law." 28

---

**10.** Section 1391(b) now provides:

[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only [in] (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b) (West Supp.1991). Subdivision (a) governs venue in diversity actions, (c) governs when the defendant is a corporation, (e) governs when a defendant is the United States or one of its agencies or employees, and

U.S.C. § 1391(b) (West 1976). Price, relying on this pre-amendment language, argues under this pre-amendment language that venue is improper because he is not a resident of this judicial district and the claim did not arise here. Defendant's Memorandum in Support of Motion to Dismiss at 9–10; Defendant's Reply Memorandum at 13–15. Section 1391(b), however, as amended by the Judicial Improvements Act of 1990, Pub.L. 101–650, Title I, § 311, 104 Stat. 5114,[11] repealed the "in which the claim arose" language. Accordingly, the threshold issue is whether the newly revised language applies to pending actions such as the case at bar. The First Circuit recently confronted a similar concern, examining the controlling, though differing, legal presumptions relevant to such an analysis. *C.E.K. Indus. Mechanical Contractors, Inc. v. NLRB,* 921 F.2d 350, 357–58 (1st Cir.1990) (citations omitted); *Demars, supra,* 907 F.2d at 1239–40. In so doing, the First Circuit noted that the Supreme Court has recognized, but not resolved,[12] an apparent tension between the Court's approach announced in *Bradley v. School Bd. of Richmond,* 416 U.S. 696, 715, 94 S.Ct. 2006, 2018, 40 L.Ed.2d 476 (1974) (court is to apply the law in effect at the time it renders its decision unless "manifest injustice" would result), and that announced by the Court in *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) (statutes and administrative rules will not be construed to have a retroactive effect unless their language requires such a result). *C.E.K., supra,* 921 F.2d at 357 n. 7. *See also Arnold, supra,* 942 F.2d at 762 n. 2 (the Tenth Circuit noted the two lines of Supreme Court authority setting forth conflicting presumptions). However, in *C.E.K.* the court reiterated its previous suggestion that

> the touchstone for deciding the question of retroactivity is whether retroactive application of a newly announced principle would alter substantive rules of conduct and disappoint private expectations.

*C.E.K., supra,* 921 F.2d at 357 n. 7 (citing *Demars, supra,* 907 F.2d at 1239–40). In *C.E.K.* the court found that the newly altered rule involved substantive conduct and that its retroactive application would plainly disappoint reasonable private expectations. *Id.* at 358.

In *Demars,*[13] the court was confronted with a provision in the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA) which enlarged district courts' subject matter jurisdiction over actions in which FDIC is a party. It found, using the *Bradley* presumption as the appropriate standard, that the provision was retroactively applicable to a suit pending on the Act's effective date. The court reasoned that the provision did not alter substantive rules of conduct, thereby not interfering with antecedent rights, and found that applying it would not result in manifest injustice. *Demars, supra,* 907 F.2d at 1240. *See also Arnold, supra,* 942 F.2d at

(f) controls in a civil action against a foreign state.

11. As there was no special effective date provision enacted for this amendment to section 1391, it is assumed to have gone into operation as of the effective date of the overall Judicial Improvements Act of 1990, which was December 1, 1990. D. Siegel, *Commentary on 1990 Revision of Subdivisions (a), (b), and (e),* 28 U.S.C. § 1391 (West Supp.1991). *See also Arnold v. Maynard,* 942 F.2d 761, 762 n. 2 (10th Cir.1991) (citing Siegal, Commentary, *supra*); *Demars v. First Service Bank for Savings,* 907 F.2d 1237, 1238–39 (1st Cir.1990) (and cases cited therein) (because federal statute was silent as to its effective date and there was no legislative intent to the contrary, court found it became effective on date of enactment); *American Trade Partners, L.P. v. A–1 Intern. Importing Enter., Ltd.,* 757 F.Supp. 545, 557 n. 18 (E.D.Pa.

1991) (Judicial Improvements Act of 1990 signed into law on December 1, 1990; however, Congress had not provided effective date).

Additionally, the application of this amendment to pending cases was not addressed by Congress. Siegel, Commentary, *supra; Arnold, supra,* 942 F.2d at 762 n. 2.

12. The Court did so in *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 837–38, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990).

13. The court's consideration of competing presumptions included the *Bradley* presumption to apply the law in effect at the time of decision, as well as the presumption enunciated in *Bennett v. New Jersey,* 470 U.S. 632, 639, 105 S.Ct. 1555, 1560, 84 L.Ed.2d 572 (1984), that statutes which affect substantive rights and liabilities must have only prospective effect. *Demars, supra,* 907 F.2d at 1239.

762 n. 2 (and cases therein cited) (the Tenth Circuit discussed choice of presumptions in context of § 1391(b)'s amendment and application to pending actions, although the court did not decide the issue as they found an alternate ground for proper venue).

Similarly, this court finds that the amendment at issue of section 1391(b) does not alter substantive rules of conduct, nor will applying it to the case at bar, which was pending on the effective date of the revision, result in a manifest injustice. *Accord, American Trade Partners, supra,* 757 F.Supp. at 557 n. 18 (court concludes that revised version of § 1391(b) should be given retroactive effect). With respect to statutes that address matters of procedure and jurisdiction, another settled presumption has been that where

> "a new statute deals only with procedure, prima facie it applies to all actions—to those which have accrued or are pending, and to future actions."

*Arnold, supra,* 942 F.2d at 762 n. 2 (quoting 2 N. Singer, *Sutherland Statutory Construction* § 41.04 at 349 (Sands 4th ed. 1986)). The Supreme Court, when considering the 1966 amendment to section 1391(b) expanding options for proper venue, stated, "This amendment does not change the substantive law applicable to this lawsuit. It is wholly procedural." *Denver & Rio Grande Western R.R. v. Brotherhood of Railroad Trainmen,* 387 U.S. 556, 563, 87 S.Ct. 1746, 1750, 18 L.Ed.2d 954 (1967). " 'No one has a vested right in any given mode of procedure.' " *Id.* (quoting *Ex parte Collett,* 337 U.S. 55, 71, 69 S.Ct. 944, 953, 93 L.Ed. 1207 (1949)). *See Smith v. Morbark Indus., Inc.,* No. 88–466–D (D.N.H. Oct. 3, 1989) (court found newly amended § 1391(c) applied to pending case).

■ Here, as no defendants reside in New Hampshire nor, presumably, may be found in this district, venue in New Hampshire can only be proper under clause (2) of the amended subdivision of section 1391(b). And since the within action is not primarily one in which property is the subject of the action,[14] venue will be proper only if "a substantial part of the events ... giving rise to [VDI's] claim[s] occurred" in New Hampshire. *See supra* note 10.

The new language accepts venue in a district in which "a substantial part" of the activities (out of which the claim arose) took place, and there may be several districts that qualify as a situs of such "substantial" activities.

The fact that substantial activities took place in district B does not disqualify district A as proper venue as long as "substantial" activities took place in A, too. Indeed, district A should not be disqualified even if it is shown that the activities in B were more substantial, or even the most substantial. Any other approach would restore the pinpointing problem that created the difficulties under the now discarded "claim arose" standard. If the selected district's contacts are "substantial", it should make no difference that another's are more so, or the most so.

The House Report of the Committee on the Judiciary (Report 101–734, p. 23) said, in referring to the "substantial ... events" clause, that,

> [t]he great advantage of referring to the place where things happened ... is that it avoids the litigation-breeding phrase "in which the claim arose".
>
> ... The "events ... occurred" idea is what longarm personal jurisdiction is based on,....

Siegel, Commentary, *supra* at 4. H.R. No. 101–734, 101st Cong., 2d Sess. 23 (1990), reprinted in 1990 U.S.Code Cong. & Admin.News 6860, 6869, goes on to state that the new language "also avoids the problem created by the frequent cases in which substantial parts of the underlying events have occurred in several districts."

Plaintiff VDI has satisfied this court that New Hampshire is the place where at least some things happened, i.e., the alleged tortious injuries to a New Hampshire corpora-

---

**14.** Although VDI claims injury to its "business and property" located in New Hampshire, Complaint at 7, ¶¶ G, H, and at 8, ¶¶ L, M, it seeks monetary damages which are presumably excluded from this criterion. Siegel, Commentary, *supra* at 4.

tion. While there may well be another situs of substantial activity in this case, the court finds that plaintiff has met its burden that venue is proper in this district.[15]

## IV. Rule 11 Sanctions

 Plaintiff VDI implores the court to impose sanctions pursuant to Rule 11, Fed. R.Civ.P., contending that it is entitled to attorney's fees and expenses "as the result of Defendant's Continuous misrepresentation of material facts towards Plaintiff's customer base." Sanction Motion at 1. VDI, however, is never clear regarding this request: whether it seeks sanctions as to defendant Sudbury alone for its "contemptuous behavior"; i.e., creating an "erroneous impression" by the allegedly tortious letter-sending to plaintiff's dealers, as implied in Plaintiff's Brief in Support of Sanction Motion at 2–3, or whether the request extends to defendant Price and his letter-sending as well. The court's conclusion in this matter, however, negates the need for clarification. Defendants Sudbury and Price contend that there is no basis for imposing Rule 11 sanctions, as the circulating of letters to customers does not even implicate Rule 11. Defendants' Memorandum in Opposition to Plaintiff's Motion to File Supplementary Memorandum and Plaintiff's Rule 11 Motion at 11.

" 'It is now clear that the central purpose of Rule 11 is to deter baseless filings in District Court and thus ... streamline the administration and procedure of the federal courts.' " *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.,* —— U.S. ——, ——, 111 S.Ct. 922, 934, 112 L.Ed.2d 1140 (1991) (quoting *Cooter & Gell. v. Hartmarx Corp.,* 496 U.S. 384, ——, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990)). "Rule 11 is 'aimed at curbing abuses of the judicial system,' " *Business Guides, supra,* —— U.S. at ——, 111 S.Ct. at 928 (quoting *Cooter & Gell, supra,* 496 U.S. at ——, 110

S.Ct. at 2450), and "[t]o this end, it sets up a means by which litigants certify to the court, by signature, that any papers filed are well founded." *Business Guides, supra,* —— U.S. at ——, 111 S.Ct. at 928.

Whatever the ultimate import and legal meaning of defendants' alleged tortious conduct in this case, VDI's request for sanctions is without foundation. Signed letters to customers or potential customers are not "filings in district court", and thus are well beyond the scope and purpose served by Rule 11. Accordingly, the court finds further analysis under Rule 11 to be unnecessary.

## Conclusion

Having found that defendant Price is properly subject to the *in personam* jurisdiction of this court and that venue is also proper in this district, defendant Price's motion to dismiss (document no. 9) is denied. Furthermore, as the court found plaintiff VDI's request for fees and expenses to be meritless, its motion requesting same (document no. 43), is denied.

SO ORDERED.

---

**15.** In so holding, the court respectfully finds itself at odds with a sister court which concluded that this amendment to section 1391(b) "was not intended to change the standard for venue, but merely to clarify the prior statutory language." *American Trade Partners, supra,* 757 F.Supp. at 557 n. 18. Albeit scant, the authority

before this court leads to a different conclusion, that Congress intended to substitute a new and broader standard when it repealed the "claim arose" clause. The old standard was usually held to demand that only one place could be appropriate as the place where the claim "arose".