ATHR, Inc. v. Nolt                    CV-97-191-JD  12/03/97
                UNITED STATES DISTRICT COURT FOR THE
                      DISTRICT OF NEW HAMPSHIRE

ATHR, Inc.

        v.                          Civil No. 97-191-JD

Gregg A. Nolt, et al.


                        O R D E R


        The plaintiff, ATHR, Inc., filed this action under the New

Hampshire Fraudulent Transfer Act, N.H. Rev. Stat. Ann. ("RSA")

§ 545-A (1997), and N.Y. Debt. & Cred. Law § 273-a, against the

defendants, Gregg Nolt, Karen Nolt, and Nolt and Associates,

Inc., to cancel various alleged fraudulent transfers and to reach

the transferred assets and proceeds.  Before the court are the

motions to dismiss the case for lack of personal jurisdiction of

defendant Gregg Nolt (document no. 7), defendant Karen Nolt

(document no. 8), and defendant Nolt and Associates (document no.

9).


                        Background[1]

        In 1990, plaintiff ATHR, Inc. ("ATHR"), a New Hampshire

corporation with its principal place of business in South

Carolina, sold its assets to Hutchinson, Smith, Nolt and

---

[1]The facts relevant to the instant motion are either not in
dispute or have been alleged by the plaintiff.

Associates, Inc. ("HSNA"), a New York corporation, for $337,000 to be paid over a ten-year period. In 1992, HSNA contested its debt and ceased its payments. ATHR then accelerated the debt and brought the related case ATHR, Inc. v. Hutchinson, Smith, Nolt & Associates, Inc., No. 93-467-M (D.N.H. filed Sept. 1, 1993). Thereafter, HSNA was rendered insolvent. On October 12, 1995, the court granted summary judgment to ATHR on the merits of the case. On July 24, 1996, the court set the amount of damages at $300,000.

ATHR asserts that the defendants in this case engaged in a series of transactions through which they intended to defraud ATHR and prevent it from collecting on ATHR's judgment against HSNA. In particular, ATHR avers that a series of transactions were fraudulent under RSA § 545-A. First, ATHR alleges that between 1992 and 1996 HSNA fraudulently transferred $436,950 to its sole owner, defendant Gregg Nolt, who was also an officer and director, in the form of W-2 salary payments. Gregg Nolt is a New York citizen, the transfers were made in New York, and New York taxes were paid on the funds.

In the second transaction, ATHR alleges that Gregg Nolt caused a letter of appointment to be fraudulently transferred from HSNA to his wife Karen Nolt's company, defendant Nolt and Associates, Inc. ("Nolt and Associates"). The letter designated

2

HSNA the exclusive factory representative in 12 states for the Wisconsin company, Felker Brothers Corporation ("Felker"), and was the principal asset of HSNA. Nolt and Associates is a New York corporation with its place of business in New York. This transfer was initiated on or about the day summary judgment was entered against HSNA, and took place in New York or Wisconsin.

Finally, ATHR alleges that Gregg Nolt fraudulently transferred his one-half share of his New York residence to his wife, defendant Karen Nolt, a New York citizen, in April 1996. One dollar was given in consideration for the interest in the residence.[2]

ATHR brought this action pursuant to the court's diversity jurisdiction. Each defendant has moved to dismiss ATHR's action, alleging that the court lacks personal jurisdiction over them.

## Discussion

The defendants argue that their contacts with New Hampshire are an insufficient basis for the court to exercise personal jurisdiction over them under both the New Hampshire long-arm statutes and the Federal Constitution. ATHR must therefore

---

[2]Plaintiff alleges that no consideration was given to Gregg Nolt for his interest in the Nolt residence, although the record indicates that the transfer was made for one dollar.

demonstrate facts sufficient to establish the court's personal jurisdiction over the defendants. See United Electrical Radio and Mach. Workers of America v. 163 Pleasant St. Corp., 960 F.2d 1080, 1090 (1st Cir. 1992), rev'd on other grounds, 987 F.2d 39, (1st Cir. 1993); Concord Labs., Inc. v. Ballard Med. Prods., 701 F. Supp. 272, 274 (D.N.H. 1988); Velcro Group Corp. v. Billarant, 692 F. Supp. 1443, 1446 (D.N.H. 1988); Lex Computer & Mgmt. v. Eslinger & Pelton, P.C., 676 F. Supp. 399, 402 (D.N.H. 1987). Where, as here, the essential jurisdictional facts are undisputed, the plaintiff need only make a prima facie showing that an adequate basis for jurisdiction exists to avoid dismissal. See Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 712 (1st Cir. 1996), cert. denied, 117 S. Ct. 1333 (U.S. Mar. 31, 1997) (No. 96-1052). In its analysis, the court takes properly pleaded facts as true and construes all reasonable inferences in favor of the plaintiff. See Velcro Group, 692 F. Supp. at 1446. The court may consider pleadings, affidavits, and other evidentiary materials. See Lex Computer, 676 F. Supp at 402.

For a federal court to exercise personal jurisdiction over a non-resident defendant in a diversity case, the plaintiff must allege jurisdictional facts that satisfy both the long-arm

4

statute of the forum state[3] and the Due Process Clause of the

Fourteenth Amendment.  See Sawtelle v. Farrell, 70 F.3d 1381,

1387 (1st Cir. 1995).  As a threshold matter, each of the

defendants has asserted that the relevant long arm statute does

not reach their conduct because the tortious acts of which they

are accused took place outside of New Hampshire.[4]  However, the

_____

[3]RSA § 510:4, which provides for personal jurisdiction in New
Hampshire over a non-resident individual defendant, states in
relevant part:

> Any person who is not an inhabitant of this state and
> who, in person or through an agent, transacts any
> business within this state, [or] commits a tortious act
> within this state . . . submits himself, or his
> personal representative, to the jurisdiction of the
> courts of this state as to any cause of action arising
> from or growing out of the acts enumerated above.

RSA § 510:4(I) (1997).

RSA § 293-A:121, which provides for personal jurisdiction
over a foreign corporate defendant, states in relevant part:

> If a foreign corporation . . . commits a tort in whole
> or in part in New Hampshire, the acts shall be deemed
> to be doing business in New Hampshire by the foreign
> corporation . . . in any actions . . . arising from or
> growing out of the . . . tort.

RSA § 293-A:121 (1987).

[4]The defendants also assert that the plaintiff has failed to
allege any wrongdoing on the part of Nolt and Associates or Karen
Nolt.  This contention is without merit.  The plaintiff has
labeled the transfers, in which Nolt and Associates and Karen
Nolt were participants, as fraudulent.  It has stated that its
cause of action arises under the New Hampshire Fraudulent
Transfer Act, RSA § 545-A and has named Nolt and Associates and

5

defendants have allegedly defrauded a New Hampshire corporation, and "[i]t is settled New Hampshire law that a party commits, for jurisdictional purposes, a tortious act within the state when injury occurs in New Hampshire even if the injury is the result of acts outside the state." Hugel v. McNell, 886 F.2d 1, 3 (1st Cir. 1989). Moreover, because the Supreme Court of New Hampshire has interpreted the long arm statutes to afford jurisdiction over non-resident defendants to the full extent that the Due Process Clause of the Fourteenth Amendment will allow, the court's jurisdictional analysis properly focuses not upon the statutes, but upon the due process requirements of the United States Constitution. See Estabrook v. Wetmore, 129 N.H. 520, 523, 529 A.2d 956, 958 (1987) (asserting jurisdiction over a non-resident individual defendant); Cove-Craft Indus. Inc. v. B.L. Armstrong Co., 120 N.H. 195, 198, 412 A.2d 1028, 1030 (1980) (asserting jurisdiction over a non-resident corporate defendant); Papafagos v. Fiat Auto, S.p.A., 568 F. Supp. 692, 694 (D.N.H. 1983) (asserting jurisdiction over a non-resident corporate defendant).

The Due Process Clause protects a defendant from the judgment of a state with which he has no meaningful ties, contacts, or relations. See Burger King Corp. v. Rudzewicz, 471

_____

Karen Nolt as defendants.

6

U.S. 462, 471-472 (1985).  In <u>International Shoe Co. v.</u>

<u>Washington</u>, the United States Supreme Court stated:

> due process requires only that in order to subject a
> defendant to a judgment in personam, if he be not
> present within the territory of the forum, he have
> certain minimum contacts with it such that the
> maintenance of the suit does not offend 'traditional
> notions of fair play and substantial justice.'

326 U.S. 310, 316 (1945) (quoting <u>Milliken v. Meyer</u>, 311 U.S.

457, 463 (1940)).  Jurisdiction is proper only when "'the

defendant's conduct and connection with the forum State are such

that he should reasonably anticipate being haled into court

there.'"  <u>Burger King</u>, 471 U.S. at 474 (quoting <u>World-Wide</u>

<u>Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980)).

In <u>Calder v. Jones</u>, the Supreme Court articulated the

"effects test" and found that due process requirements were

satisfied when out-of-state defendants were primary participants

in an alleged wrongdoing intentionally directed at a resident of

the forum state.  <u>See</u> 465 U.S. 783, 790 (1984).  When an

intentional tortfeasor acts with the knowledge that the brunt of

its injury would be felt in a particular state, the tortfeasor

has established purposeful contacts or substantial connections

with the state such that the tortfeasor could reasonably expect

to be haled into the state's courts.  <u>See</u> <u>id.</u> at 789-90.  The

Court emphasized (1) the intentional nature of the alleged tort,

7

(2) the devastating impact it would likely have, and (3) the fact that the defendants knew that the brunt of the injury would be felt by the respondent in the forum state.  See id.

In Hugel v. McNell, the First Circuit followed Calder by adopting the effects test in a defamation case.  See 886 F.2d 1. In Hugel, out-of-state defendants allegedly defamed a New Hampshire resident.  See id. at 2.  The court found that the complaint satisfied the requirements for personal jurisdiction where it alleged that the defendants committed an intentional tort, directed their actions toward a New Hampshire resident, and knew that their actions would have a devastating impact in New Hampshire where the plaintiff resided and had an established reputation.  See id. at 5.

The effects test is not, however, limited to cases involving defamation.  See, e.g., Anderson v. Century Prods. Co., 943 F. Supp. 137 (D.N.H. 1996) (applying effects test where plaintiff sued for misappropriation of an idea); VDI Techs. v. Price, 781 F. Supp. 85 (D.N.H. 1991) (applying effects test where plaintiff sought declaratory judgment on patent issues and claimed damages for unfair competition and violations of federal anti-trust laws); Concord Labs, Inc., v. Ballard Med. Prods., 701 F. Supp. 272 (D.N.H. 1988) (applying effects test where plaintiffs sued on patent issues, unfair competition issues, violations of anti-

trust laws, and consumer protection statutes).  Because the defendants here are alleged to have committed intentional torts against the plaintiff, the court will use the effects test to analyze the exercise of personal jurisdiction over each of the defendants seriatim.

I.    Gregg Nolt

Gregg Nolt asserts that exercising jurisdiction over him would violate the Due Process Clause because he has done nothing to avail himself of the privilege of conducting activities in New Hampshire, nor has he invoked the benefits and protections of New Hampshire's laws.  He is not registered to do business in New Hampshire, does not own property in New Hampshire, does not employ New Hampshire residents, and has not conducted business with ATHR in New Hampshire or anywhere else.  Finally, he is not a resident of New Hampshire, nor has he committed a tort in New Hampshire.  He argues therefore that he has insufficient contacts between himself and New Hampshire to support jurisdiction.  Additionally, he asserts that jurisdiction would offend traditional notions of fair play and substantial justice because he lives 250 miles from New Hampshire and has limited resources.  ATHR argues that jurisdiction is permissible under the Due Process Clause because the defendant purposely directed his

actions at New Hampshire and knew or should have known that his conduct would cause harm in New Hampshire.

Gregg Nolt's arguments that all of his actions took place out of New Hampshire, or that he otherwise has little or no contact with New Hampshire, are unavailing.  In VDI Technologies, personal jurisdiction was established over an out-of-state defendant with no connections to New Hampshire other than letters that were mailed from outside New Hampshire to the California customers of VDI Technologies (VDI), a New Hampshire corporation. See 781 F. Supp. at 88, 89.  None of the defendant's physical acts took place in New Hampshire.  See id. at 89.  However, the letters alleged that VDI had infringed on a patent and threatened VDI's California customers with lawsuits.  See id. at 88.  The plaintiff sought, inter alia, damages for unfair competition and violations of federal anti-trust laws.  See id. at 86.  The court in VDI Technologies exercised personal jurisdiction over the defendants because the complaint sufficiently alleged that the letters were intentional acts aimed at a New Hampshire corporation and "could not have been construed to have conferred a benefit or even benign impact on" the plaintiff.  Id. at 92. "If damage could have been done to VDI's business, it is not an unfair inference that the brunt of such injury would surely be felt most [in New Hampshire,] at VDI's sole corporate location."

10

_Id._ The court found it important that the defendant was "'not charged with mere untargeted negligence.'" _Id._ (quoting _Calder_, 465 U.S. at 789). Instead, the defendant could "fairly be charged with such knowledge regarding the effect of his intentional and allegedly tortious actions," satisfying the dictates of due process and making the exercise of jurisdiction proper. _Id._

In the instant case, ATHR claims that defendant Gregg Nolt engaged in fraudulent transfers of assets to prevent ATHR from collecting on the debt HSNA owed to ATHR and to secure the assets for himself. That these actions were intentionally aimed at New Hampshire is reasonably inferable from the pleadings and exhibits submitted. ATHR is incorporated in New Hampshire. It has had ongoing relations with Gregg Nolt's closely-held company, including a previous lawsuit in New Hampshire, such that it is reasonable to infer that Gregg Nolt would know of ATHR's New Hampshire citizenship. ATHR has therefore made a _prima facie_ showing that if Gregg Nolt transferred assets to defraud ATHR, he did this with the knowledge that the plaintiff was a New Hampshire corporation and that he therefore "committed an intentional tort, direct[ing his] actions towards the forum state." _Hugel_, 886 F.2d at 5.

It is also a reasonable inference that Gregg Nolt knew the alleged actions would have a devastating impact on ATHR and its

11

ability to recover its debt. Gregg Nolt is the sole owner and principal of HSNA. HSNA is allegedly insolvent and is indebted to ATHR for $300,000. ATHR avers, <u>inter alia</u>, that Gregg Nolt fraudulently took $439,950 in W-2 salary payments from HSNA between 1992 and 1996 to prevent ATHR from reaching it. If Gregg Nolt has thereby left HSNA without adequate assets to satisfy the debt owed ATHR, the injury to ATHR is great indeed.[5] A reasonable person in Gregg Nolt's position would have knowledge of these facts. Intentionally removing assets from HSNA to defraud ATHR "could not have . . . conferred a beneficial or even benign impact" on the New Hampshire plaintiff. <u>VDI Techs.</u>, 781 F. Supp. at 92. ATHR has therefore made a <u>prima facie</u> showing that Gregg Nolt knew his actions would have the requisite impact on ATHR.

In addition, ATHR has made a <u>prima facie</u> showing that Gregg Nolt knew the brunt of the injury would be felt in New Hampshire. ATHR is incorporated in, and therefore is a citizen of, New Hampshire. "[L]oss from fraud is deemed to be suffered where its economic impact is felt, normally the plaintiff's residence."

---

[5]The defendants claim that ATHR is a shell corporation whose only purpose is to collect the judgment against HSNA. This assertion supports rather than undermines ATHR's position, because if it is true then the injury would deprive ATHR of its only asset.

Sack v. Low, 478 F.2d 360, 366 (2nd Cir. 1973) (discussing where injury was suffered and cause of action for fraud arose in context of New York borrowing statute). "For a corporation the place where economic injury is felt is usually understood to be its place of incorporation." Maslan v. American Airlines, Inc., 885 F. Supp. 90, 94 (S.D.N.Y. 1995). "The economic loss may be said to occur in a state other than the plaintiff's state of residence only in the 'extremely rare' case . . . ." Farley v. Baird, Patrick, & Co., 750 F. Supp. 1209, 1215 (S.D.N.Y. 1990) (discussing locus of injury to individual plaintiff in securities fraud claim).

The court therefore finds that ATHR has made a prima facie showing of the elements necessary to satisfy the effects test: the defendant intentionally directed his actions at ATHR, a New Hampshire corporation, with knowledge of the devastating impact it would have on ATHR in this state.

Finally, Gregg Nolt argues that the fiduciary shield doctrine prevents the court from exercising jurisdiction over him as an individual. The fiduciary shield doctrine provides that the acts of a person in their corporate capacity usually do not form a basis for jurisdiction over the person in their individual capacity. See Estabrook, 129 N.H. at 523, 529 A.2d at 958. The rationale is that

13

> it is unfair to force an individual to defend a suit
> brought against him personally in a forum with which
> his only relevant contacts are acts performed not for
> his own benefit but for the benefit of his employer.

Id. at 524, 529 A.2d at 959 (quoting Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 902 (2d Cir. 1981)). In Calder, the Supreme Court addressed the fiduciary shield doctrine in an analogous context. See Estabrook, 129 N.H. at 524, 529 A.2d at 959. It found that where parties "are primary participants in an alleged wrongdoing intentionally directed at a [state's] resident . . . jurisdiction over them is proper on that basis." 465 U.S. at 790. Here, Gregg Nolt is alleged to be a primary participant in a scheme to defraud ATHR, and the fiduciary shield doctrine is inapplicable.

For these reasons, the court may properly exercise personal jurisdiction over Gregg Nolt as to the asserted fraudulent transfers.[6]

---

[6]Because of the court's decision on this issue, it need not consider the parties' other arguments.

II.  Nolt and Associates

Nolt and Associates asserts the same constitutional arguments as both Gregg and Karen Nolt.  As with defendant Gregg Nolt, the effects test is applicable to defendant Nolt and Associates.  Jurisdiction is warranted when a tortfeasor intentionally aims its actions at a forum state with knowledge that a devastating impact on another party is likely, the brunt of which would be felt in the forum state.  See Hugel, 886 F.2d at 4.  In the instant case, ATHR alleges that a fraudulent transfer of an asset was made from HSNA to Nolt and Associates.  Specifically, it contends that HSNA's principal asset, a letter of appointment designating HSNA the representative of Felker, was fraudulently transferred from HSNA to Nolt and Associates.  It avers that the transfer was intended to remove income from HSNA to Nolt and Associates, to strip HSNA of its asset, to prevent ATHR from reaching it, and to secure the asset for Gregg Nolt and his wife Karen Nolt.

The record ATHR has adduced supports this contention with the following:  (1) the dates of the unfavorable summary judgment correspond to the dates when HSNA's representation of Felker terminated, (2) the termination was apparently on good terms, despite the fact that the arrangement was the principal asset of HSNA and its termination was without cause, (3) Nolt and

15

Associates began representation of Felker on January 1, 1996, approximately one and one half months after HSNA's representation terminated, (4) at all times during this transfer of HSNA's principal asset, HSNA was insolvent and in debt to ATHR for $300,000, and (5) the debtor/transferor, HSNA, was solely owned by Gregg Nolt, and the transferee, Nolt and Associates, was solely owned by his wife Karen Nolt. ATHR has therefore made a prima facie showing that if Nolt and Associates participated in the fraudulent transaction alleged, its conduct was intentionally directed at the New Hampshire plaintiff with the knowledge that HSNA's inability to satisfy the $300,000 judgment would ultimately have its requisite impact on ATHR in New Hampshire.

For these reasons, the court may properly exercise jurisdiction over Nolt and Associates for alleged fraudulent transfers.[7]

III. Karen Nolt

Defendant Karen Nolt argues that she has no contacts with New Hampshire that should subject her to suit here. The court's inquiry for purposes of the effects test is, as stated before, whether Karen Nolt intentionally aimed actions at New Hampshire,

---

[7]In light of its conclusion, the court need not consider the parties' additional arguments.

16

whether she knew the acts would have a devastating effect on ATHR, and whether she knew the impact would likely be felt in New Hampshire. See Hugel, 886 F.2d at 4. Karen Nolt's knowing participation in the allegedly fraudulent transfer of Gregg Nolt's interest in the Nolt residence for one dollar can reasonably be inferred by the lack of consideration given for the transfer, the correlation between the dates of the judgment against HSNA and the transfer, and the Nolts' marriage. See, e.g., RSA § 545-A:4(II)(a),(h) (factors in discerning intent to defraud include "inside" relationships of parties and adequacy of consideration given).

Given Karen Nolt's intertwined business and personal relations with Gregg Nolt, the court finds it to be a reasonable inference that if Karen Nolt participated in the alleged fraudulent transactions, she knew that (1) a fraud on ATHR was a fraud on a New Hampshire corporation, (2) the fraud could undermine or destroy the value of ATHR's judgment, and (3) the fraud would have its impact on ATHR in New Hampshire where ATHR is a citizen. ATHR has therefore made a prima facie showing that meets the requirements of the effects test, justifying the exercise of personal jurisdiction over Karen Nolt.

Karen Nolt also argues that the fiduciary shield doctrine precludes the court from exercising jurisdiction over her.

17

However, as discussed in part I, supra, the fiduciary shield doctrine does not protect an individual who is alleged to have been a primary participant in an intentional wrongdoing directed at the resident of another state.  Therefore, Karen Nolt is properly subject to the personal jurisdiction of this court.[8]

Conclusion

For the reasons stated above, the motions to dismiss the case for lack of personal jurisdiction of defendant Gregg Nolt (document no. 7), defendant Karen Nolt (document no. 8), and defendant Nolt and Associates (document no. 9) are denied.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

December 3, 1997

cc:  William Edward Whittington IV, Esquire
     Charles P. Bauer, Esquire

_____

[8]In light of its decision, the court need not inquire into the other arguments asserted by the parties.