**LEX COMPUTER & MANAGEMENT CORP., Montage Group, Ltd.**

v.

**ESLINGER & PELTON, P.C., CBS, Inc., Laurence Tisch.**

**Civ. No. 87–320–D.**

United States District Court, D. New Hampshire.

Nov. 20, 1987.

Brook Haberman, Keene, N.H., for plaintiffs.

Irvin D. Gordon, Concord, N.H., for defendants.

## ORDER

DEVINE, Chief Judge.

In this federal question[1] and diversity action,[2] plaintiffs Lex Computer and Management Corp. ("Lex") and Montage Group, Ltd. ("Montage"), bring suit against defendants CBS, Inc., Eslinger & Pelton, P.C. (attorneys for CBS), and Laurence Tisch (President of CBS). Plaintiffs request a declaratory judgment that a patent held by CBS is invalid, and they seek a temporary restraining order and preliminary[3] and/or permanent injunctive relief prohibiting defendants from making defamatory statements and statements that plaintiffs' equipment infringes on said patent. Plaintiffs also seek damages under various state tort claims.[4]

---

1. Plaintiffs assert jurisdiction under 28 U.S.C. § 1338 (establishing jurisdiction in actions arising under the patent laws) and 28 U.S.C. §§ 2201 and 2202 (jurisdiction over declaratory judgment actions).

2. Plaintiffs also base jurisdiction on 28 U.S.C. § 1332, the parties being diverse and the amount in controversy exceeding $10,000.

3. Plaintiffs assented to defendants' motion to defer the preliminary injunction hearing until resolution of the instant motion.

4. Plaintiffs allege intentional interference with contractual relations (Count III), interference with present and prospective advantage (Count IV), injurious falsehood (Count V), defamation (Count VI), and "disparagement" (Count VII).

This matter is presently before the Court on defendants' motion to dismiss the complaint for lack of personal jurisdiction, Rule 12(b)(2), Fed.R.Civ.P.; for improper venue, Rule 12(b)(3), Fed.R.Civ.P.; and on defendants' motion for attorney's fees. Plaintiffs' objections to said motions, defendants' response thereto, and plaintiffs' supplemental memorandum, as well as all exhibits and affidavits have been duly considered by the Court.

### Factual Background

Plaintiffs Lex and Montage are New Hampshire corporations with their principal places of business in Keene, New Hampshire. Complaint ¶¶ 1, 2. Plaintiffs allege in their complaint that Lex is the owner of Patent No. 4,538,188, which describes a device that "electronically edits movies and television film." *Id.* ¶ 7; Haberman Affidavit ¶¶ 3, 4. Montage is in the business of selling and leasing a videotape editing system known as the "Montage Picture Processor", which evidently edits film under the Lex patent system. Complaint ¶¶ 7, 8.[5] Defendant Eslinger & Pelton is a professionally incorporated law firm with its sole place of business in New York, New York. Complaint ¶ 3; Pelton Affidavit ¶ 2.

Defendant CBS is a New York corporation with its principal place of business in New York. Complaint ¶ 4; Bates Affidavit ¶ 2. Defendant Laurence Tisch is the President of CBS and resides in New York City. Complaint ¶ 5; Tisch Affidavit ¶ 2.

On January 23, 1987, Spencer Olson of Eslinger & Pelton, P.C., as counsel for defendant CBS, sent a letter ("E & P letter") to Michael Lowe, President of Montage Computer Corporation, suggesting that the Montage Picture Processor may infringe on the CBS "Ettlinger" patent. (Specifically, the letter stated that the Ettlinger patent was "pertinent to" the Montage Picture Processor.) The letter proposed to grant Montage a nonexclusive license to sell the Montage processor under the Ettlinger patent. Complaint, Exhibit A. Montage sought clarification of the E

& P letter, specifically asking how CBS believed the device infringed on its patent, but received no answer. Complaint ¶ 8; Lowe Affidavit ¶ 4.

Plaintiffs then discovered that Eslinger & Pelton had sent similar letters to plaintiffs' clients and prospective clients, suggesting that the Montage Picture Processor infringed on the Ettlinger patent. Complaint ¶ 10; Haberman Affidavit ¶ 9. Plaintiffs allege that the letters had a serious effect on the market for plaintiffs' product and "for a time made it impossible to sell or lease any more Montage [film editing] systems," Haberman Affidavit ¶ 9, and that the letters impacted Montage's property in New Hampshire. Plaintiffs' Memorandum at 2. Plaintiffs state that when they asked Mr. Olson why he had sent the letters to Montage customers, he replied it was done "to get [Montage's] attention to [the Eslinger & Pelton] letter." Haberman Affidavit ¶ 9. As a result of these letters, customers contacted Montage to seek assurance that there was no patent infringement, and Montage had to "guarantee ... that they would hold them harmless from this alleged implied threat." Haberman Affidavit ¶ 10; Lowe Affidavit ¶ 6.

On April 8, 1987, Irving Weiner, Esq., patent counsel for Montage, sent a letter to Eslinger & Pelton asserting that the Ettlinger patent did not apply to the Montage Picture Processor and rejecting the proposed licensing agreement. Complaint ¶ 9 and Exhibit B. The letter also referred to the "disparaging" letters Eslinger & Pelton had sent to Montage's customers and demanded a retraction. Complaint Exhibit B. Plaintiff alleges Eslinger & Pelton continued to send letters, causing "grave concern among Montage's clients and would-be clients." Complaint ¶ 10.

On May 5, 1987, Mr. Lowe sent a letter to defendant Laurence Tisch, President of CBS, asking him to assure current and potential users of the Montage Picture Processor that the equipment did not interfere with the CBS patent. Complaint ¶ 11. On July 6, 1987, Montage received CBS's July

---

**5.** Although the relationship between the plaintiffs is not clearly stated in the complaint, it appears that Montage is Lex's licensee under the patent.

2 reply that in the opinion of its patent counsel the Montage Picture Processor infringed on the Ettlinger patent. Complaint, Exhibit C.

### Discussion

■ Because defendants have denied personal jurisdiction, plaintiffs assume the burden of proving that jurisdiction exists in this court. *Ealing Corp. v. Harrods, Ltd.,* 790 F.2d 978, 979 (1st Cir.1986) (citing *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936)); *Dustin v. Cruise Craft, Inc.,* 487 F.Supp. 67, 69 (D.N.H. 1980). Plaintiffs must not only plead facts sufficient to support jurisdiction, but must also go beyond the pleadings and make affirmative proof. *Chlebda v. H.E. Fortna & Brother, Inc.,* 609 F.2d 1022, 1024 (1st Cir.1979). However, plaintiffs need make only a prima facie showing of jurisdictional facts to avoid defendants' motion to dismiss. *Data Disc, Inc. v. Systems Technology Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir.1977); *Dustin v. Cruise Craft, Inc., supra,* 487 F.Supp. at 69. The Court may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment. *Papafagos v. Fiat Auto, S.p.A.,* 568 F.Supp. 692, 693 n. 1 (D.N.H. 1983).

### Personal Jurisdiction

This Court may assert personal jurisdiction over defendants only if plaintiffs show that defendants are subject to the applicable New Hampshire long-arm statute and that assertion of jurisdiction is consistent with the due process, or minimum contacts, requirement of the United States Constitution.[6] *Kowalski v. Doherty, Wallace, Pillsbury & Murphy,* 787 F.2d 7, 9–10 (1st Cir.1986); *Hahn v. Vermont Law School,* 698 F.2d 48 (1st Cir.1983). This is a two-step process; the constitutional analysis is not reached unless plaintiffs first establish that the state long-arm criteria have been met. *Kowalski, supra,* 787 F.2d at 10.

■ Although plaintiffs have not specified the New Hampshire statute under which they claim personal jurisdiction over defendants, the Court finds New Hampshire Revised Statutes Annotated ("RSA") 510:4 (1983) to be the relevant provision. RSA 510:4 provides:

I. JURISDICTION. Any person who is not an inhabitant of this state and who, in person or through an agent, transacts any business within this state, commits a tortious act within this state, or has the ownership, use, or possession of any real or personal property situated in this state submits himself, or his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from or growing out of the acts enumerated above.

Jurisdiction vests if any of the three acts enumerated in the statute are present. *See, e.g., Kinchla v. Baumner,* 114 N.H. 818, 330 A.2d 112 (1974).

### Defendants CBS and Eslinger & Pelton

Plaintiffs argue that defendants are subject to this Court's jurisdiction because they have "committed a tortious act within the state." RSA 510:4. Specifically, plaintiffs assert that defendants sent allegedly defamatory letters to purchasers and prospective purchasers of the Montage Picture Processor which adversely interfered with plaintiffs' contractual and business relations. Defendants argue that these letters were sent solely to nonresidents of New Hampshire from New York, an assertion which is uncontradicted by plaintiffs' pleadings and affidavits. Defendants therefore

---

**6.** In addition to jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332, plaintiffs have based jurisdiction on 28 U.S.C. § 1338(a), which gives federal question jurisdiction over actions arising under patent suits. Compliance with the state's long-arm statute and minimum contacts are required under both provisions. *Classic Golf Co. v. Karsten Mfg. & Karsten Solheim,* 231 U.S.P.Q. 884 (N.D.Ill.1986) [Available on WESTLAW, 1986 WL 8953] (citing *Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290, 295–97 (3d Cir.), *cert. denied,* 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985)). *See also Centronics Data Computer Corp. v. Mannesmann, A.G.,* 432 F.Supp. 659, 664–65 (D.N.H.1977) (jurisdiction in federal question action founded partly under New Hampshire long-arm statute.)

contend they have not committed a tortious act in New Hampshire.

The New Hampshire Supreme Court has established that RSA 510:4 subjects a non-resident defendant to jurisdiction here when the impact in New Hampshire of the defendant's out-of-state conduct has allegedly resulted in a New Hampshire tort and was more than fortuitous, so that the defendant knew or should have known his conduct could injure a person here. *Estabrook v. Wetmore*, 129 N.H. 520, 529 A.2d 956 (1987) (citing *Hall v. Koch*, 119 N.H. 639, 406 A.2d 962 (1979); *Tavoularis v. Womer*, 123 N.H. 423, 462 A.2d 110 (1983)). A thorough review of the pleadings and affidavits shows that the impact of the alleged torts here occurred in New Hampshire.

Plaintiffs Montage and Lex are New Hampshire corporations with their principal places of business in New Hampshire. Complaint ¶¶ 1, 2. If, as plaintiff alleges, defendants sent defamatory letters to Montage's customers and prospective customers stating that the editing equipment those customers had obtained or could obtain from Montage was covered by a patent held by CBS (Haberman Affidavit ¶ 9), and if this adversely affected plaintiffs' business relations, the effect was felt in New Hampshire. The fact that the letters were sent to companies outside New Hampshire does not preclude a finding that injury occurred in New Hampshire. *Tavoularis, supra*, 462 A.2d at 112. Regarding plaintiffs' defamation count (Count VI), although the tort of libel is generally held to occur wherever the offending material is circulated, Restatement (Second) of Torts § 557A comment a (1977), false statements of fact harm not only the readers of the statement, but also the subject of the falsehood, *Keeton v. Hustler*, 465 U.S. 770, 776–77, 104 S.Ct. 1473, 1479–80, 79 L.Ed.2d 790 (1984). Additionally, in a cause of action for intentional interference with contractual relations (Count VI), an element of the offense is pecuniary loss resulting from the interference. Restatement (Second) of Torts § 774A comment b (1977). Plaintiffs have alleged that Montage lost sales for a time due to the defendants' letters to customers and prospective customers. Haberman Affidavit ¶ 2. If this loss occurred in New Hampshire, the injury occurred here.

Defendants assert that a recent First Circuit Court of Appeals decision precludes the use of the New Hampshire long-arm statute in this case because no physical injury occurred in New Hampshire. *Kowalski, supra*, 787 F.2d at 7. This Court finds the *Kowalski* decision not to be so limited. In *Kowalski*, the court held that New Hampshire had no jurisdiction over a Massachusetts law firm in a legal malpractice action where the firm failed to timely file a suit in a Massachusetts court. The First Circuit reasoned that the injury occurred in Massachusetts because plaintiff was barred from bringing suit there, and the fact that the injury "affected" a New Hampshire resident did not establish an injury in New Hampshire. *Id.* at 11. Although the *Kowalski* court distinguished *Tavoularis* by noting that in *Tavoularis* a physical injury had occurred in New Hampshire, the *Kowalski* court based its decision on the fact that the legal malpractice injury had occurred in Massachusetts, not on the fact that the injury was not physical. *Id.*

In the instant case, the torts allegedly committed by defendant do not involve physical injury; the injury alleged is defamation and harm to plaintiffs' business relations. Accordingly, because plaintiffs' principal place of business is in New Hampshire and harm is alleged to be located in New Hampshire, the Court finds that defendants' conduct results in a New Hampshire tort. *Triple–A Baseball Club Assoc. v. N.E. Baseball, Inc.*, 655 F.Supp. 513 (D.Me.1987), (*aff'd in part, rev'd in part on other grounds, Triple–A Baseball Club Assoc. v. N.E. Baseball, Inc.*, 832 F.2d 214 (1st Cir.1987) ("if [defendant's out-of-state activity] was tortious, then it interfered with the property rights of the Limited Partnership ... that, if located anywhere, were located in Maine." *Id.* at 534.)

Additionally, the pleadings and affidavits satisfy the plaintiffs' burden to show that the defendants knew or should have known their conduct could injure a person here. *Estabrook, supra*. Plaintiffs and their at-

torney sent letters and made phone calls to CBS and Eslinger & Pelton informing them that their letters to Montage's customers were adversely affecting plaintiffs' business. Complaint ¶¶ 9, 11, 12. And plaintiffs assert, and defendants do not dispute, that defendants continued to send such letters. *Id.* ¶ 10. Therefore, the Court finds that the defendants' activities fall under RSA 510:4's provisions regarding tortious activity in New Hampshire and subject defendants to the New Hampshire long-arm statute.

■ Because the requirements of the New Hampshire long-arm statute have been met, this Court must determine whether defendants' contacts with the state are sufficient to satisfy the requirements of due process. *Papafagos, supra,* 568 F.Supp. 692. The United States Supreme Court has established that the due process clause of the Fourteenth Amendment of the United States Constitution protects a defendant from the judgment of a state with which it has no meaningful "ties, contacts or relations." *Burger King v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 159–60, 90 L.Ed. 95 (1945)). The Court must engage in a two-step analysis to determine whether jurisdiction over the defendant comports with due process: first, does the defendant have "minimum contacts" with the forum state, and, second, does assertion of personal jurisdiction offend traditional notions of fair play and substantial justice? *International Shoe, supra,* 326 U.S. at 316, 66 S.Ct. at 158.

■ Minimum contacts are established when a defendant "purposefully directs" his activities to residents of the forum state, *Burger King, supra,* 471 U.S. at 476, 105 S.Ct. at 2184 (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774–75, 104 S.Ct. 1473, 1478–79, 79 L.Ed.2d 790 (1984)), and the litigation results from alleged injuries that "arise out of or relate to" those activities, *id.,* 471 U.S. at 472, 105 S.Ct. at 2182 (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984)).

■ Here plaintiff has made a prima facie showing that CBS, by sending letters to Montage's customers, purposefully directed its activities at Montage, a New Hampshire corporation. The Chairman of the Board of Montage stated in his affidavit that defendants' agent, Mr. Olson, told him that CBS had sent letters to customers and prospective customers to "get [Montage's] attention to his letter [regarding the alleged applicability of the CBS patent to the Montage Picture Processor]." Haberman Affidavit ¶ 9. If plaintiff can show that the letters were defamatory or that they adversely affected plaintiffs' business, then the brunt of this harm would be felt in New Hampshire, Montage's principal place of business. Jurisdiction is therefore proper in New Hampshire based on the "effects" of the defendant's out-of-state conduct. *Calder v. Jones,* 465 U.S. 783, 789, 104 S.Ct. 1482, 1486–87, 79 L.Ed.2d 804 (1983) (citing *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 298–99, 100 S.Ct. 559, 567–68, 62 L.Ed.2d 490 (1980)).

In *Calder, supra,* The United States Supreme Court recently discussed the "effects" doctrine. The Court found that an allegedly libelous article written in Florida by a Florida resident about a California resident could bring the Florida resident under the jurisdiction of the California court, although the defendant had no other contacts with that state. The Supreme Court approved of the effects test adopted by the lower court, which the Supreme Court described as standing for the proposition that: "[T]he fact that the actions causing the effects in California were performed outside the State did not prevent the State from asserting jurisdiction over a cause of action arising out of those effects." *Id.* at 787, 104 S.Ct. at 1485.

The Supreme Court in *Calder* emphasized the intentional nature of the defendants' conduct and its calculated injurious effect in the forum state. *Id.* at 788–90, 104 S.Ct. at 1486–88. According to the Court, the defendants knew that the article "would have a potentially devastating im-

pact on respondent. And they knew that the brunt of that injury would be felt by respondent in the state in which she lives and works...." *Id.* at 789–90, 104 S.Ct. at 1487.

Here, the same can be said for CBS. If CBS through its agent Eslinger & Pelton sent letters to Montage customers saying that the Montage Picture Processor interfered with its patent, it should have anticipated the harm to Montage's business. In fact, the alleged statement of Mr. Olson that Eslinger & Pelton sent the letters to Montage customers to get plaintiffs' attention shows that defendant recognized that its letter would have an impact on Montage. To the extent that the letters harmed plaintiffs' business, and the damage occurred in New Hampshire, CBS should have reasonably anticipated being "haled into court" here. *World–Wide Volkswagen, supra,* 444 U.S. at 297, 100 S.Ct. at 567.

The instant case is similar to *Centronics Data Computer Corp. v. Mannesmann, supra* note 6, 432 F.Supp. 659, in which plaintiff, a Delaware corporation with its principal place of business in New Hampshire, brought an action in this court against a foreign defendant alleging violation of the antitrust laws, interference with contractual relations, and defamation. Although the acts complained of occurred out-of-state, this Court looked at the effects in New Hampshire and held that jurisdiction was proper here. The Court noted that "the alleged tortious conduct was aimed specifically at Centronics, whose sole and principal place of business is New Hampshire." *Id.* at 666. Similarly, in the instant case the alleged tortious conduct was aimed at a New Hampshire corporation.

Under the second arm of the due process analysis required by *International Shoe* and its progeny, the Court also finds that it would not violate standards of fairness to bring defendants under the jurisdiction of the New Hampshire court. The Supreme Court has stated that as a part of the fairness inquiry, courts should look at the public policy interests of the forum state:

A state has an especial interest in exercising judicial jurisdiction over those who commit torts within its territory. This is because torts involve wrongful conduct which a state seeks to deter, and against which it attempts to afford protection, by providing that a tortfeasor shall be liable for damages which are the proximate result of his tort.

*Keeton, supra,* 464 U.S. at 776, 104 S.Ct. at 1479 (quoting *Leeper v. Leeper,* 114 N.H. 294, 298, 319 A.2d 626, 629 (1974)). New Hampshire has a strong interest in providing a forum for its residents to redress injuries suffered here. *Estabrook, supra,* 529 A.2d at 960 (citing *Cove–Craft Indus. v. B.L. Armstrong Co., Ltd.,* 120 N.H. 195, 201, 412 A.2d 1028, 1032 (1980)). Therefore, the Court concludes that defendants' contacts with New Hampshire satisfy the requirements of due process, and the Court thus has jurisdiction over defendants CBS and Eslinger & Pelton.

*Defendant Laurence Tisch*

█ Jurisdiction over the individual officer of a corporation may not be based on jurisdiction over the corporation. *Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902, 906 (1st Cir.1980) (citing *Weller v. Cromwell Oil Co.,* 504 F.2d 927 (6th Cir. 1974)). To assert personal jurisdiction over Laurence Tisch, President of CBS, plaintiffs must demonstrate his direct personal involvement in some decision or action which is causally related to plaintiffs' alleged injury, apart from defendant's mere status as a corporate officer. *Escude Cruz, supra,* at 906–07.

Plaintiffs allege only that the President of Montage wrote a letter to Mr. Tisch requesting that he "as chief executive officer" stop Eslinger & Pelton from sending letters to Montage customers, and that Mr. Tisch failed to control the actions of CBS's agent, Eslinger & Pelton. Plaintiffs' Supplemental Memorandum at 2. This mere allegation is not sufficient to show Mr. Tisch's direct personal involvement in the harm alleged. Therefore, this Court has no jurisdiction over defendant Tisch, and the action is dismissed as to him.

*Venue*

Venue in declaratory judgment actions for patent invalidity is governed by the general venue statute, 28 U.S.C. § 1391, and not by the patent venue statute, 28 U.S.C. § 1400(b). *U.S. Aluminum Corp. v. Kawneer Co.*, 694 F.2d 193, 195 (9th Cir.1982); *General Tire & Rubber Co. v. Watkins*, 326 F.2d 926 (4th Cir.), *cert. denied*, 377 U.S. 909, 84 S.Ct. 1166, 12 L.Ed.2d 179 (1964); C. Wright, A. Miller & E. Cooper, 15 *Federal Practice and Procedure* ("Wright & Miller") § 3823 at 221 (1986).

Defendants assert in their motion to dismiss that venue is improper in New Hampshire under 28 U.S.C. § 1391(b), which provides that in a civil action not founded solely on diversity, the claim "may be brought only in the judicial district where all defendants reside, or in which the claim arose...." Since the action here is founded on a federal claim of patent invalidity in addition to diversity, section 1391(b) is the appropriate venue statute. And, in light of plaintiff's admission that the defendants CBS and Eslinger & Pelson reside in New York, New York, the sole issue under this section is whether the "claim arose" in New Hampshire.

Plaintiffs have the burden to establish that venue is appropriate in this district. *Hodson v. A.H. Robins Co.*, 528 F.Supp. 809, 812 (D.Va.1981), *aff'd Hodson v. A.H. Robins Co.*, 715 F.2d 142 (4th Cir.1983); *Stanley Works v. Globemaster*, 400 F.Supp. 1325, 1330 (D.Mass.1975); Wright & Miller, *supra*, § 3826 at 259. In a case where multiple claims are joined, venue must be proper for each claim. *Beattie v. United States*, 756 F.2d 91, 100 (D.C.Cir. 1984) (citing Wright & Miller, *supra*, § 3808). Thus, in the instant case plaintiffs must establish that venue is appropriate (i.e., "the claim arose") in this district for the state law claims (Counts III–VI)

and for the declaratory judgment action for patent invalidity (Count II).

 Plaintiffs' state law claims sound in tort. It is well established in this district that a tort claim arises in the jurisdiction where the injury occurs. *Centronics Data Computer, supra,* 432 F.Supp. at 661. The Court found jurisdiction over defendants herein based on plaintiffs' assertion that letters sent to Montage customers harmed plaintiffs' business in New Hampshire. If the injury occurred in New Hampshire, then the tort claims arose in New Hampshire, and venue is appropriate under section 1391(b).

 As to plaintiffs' claim for patent invalidity, their only argument that the claim arises in New Hampshire is that defendants sent letters to Montage notifying it of a patent infringement. Only one court has held that sending letters into a forum notifying plaintiffs of a patent infringement establishes venue in that forum. *Chromium Indus. v. Minor,* 193 U.S.P.Q. 158 (N.D.Ill.1976). *Chromium* is inapplicable, however, because that court based its decision on the fact that defendant sent the notice of infringement to plaintiffs *in the forum state, id.,* whereas in the case at bar, the infringement notification letters were sent to defendants in Massachusetts and New York, not in New Hampshire, the forum state. Complaint, Exhibits A, C. Therefore, venue does not exist in this court under the *Chromium* reasoning.[7] Because plaintiffs have made no other arguments that venue is proper in this district, they have not met their burden of establishing venue over the declaratory judgment action for patent invalidity, and the federal question aspect of this action (Count II) should be dismissed pursuant to 28 U.S.C. § 1406(a).

Because plaintiffs have established venue in this district over the state tort claims,

---

7. The Court also questions the validity of the *Chromium* court's approach to venue considerations in light of a more recent United States Supreme Court decision which adopted a "weight of the contacts" test under section 1391(b) in cases where a claim arises in more than one district. *See Leroy v. Great Western*

*United Corp.,* 443 U.S. 173, 185, 99 S.Ct. 2710, 2717, 61 L.Ed.2d 464 (1979); *see also* Wright & Miller, *supra,* § 3806, at 61, which characterized the *Leroy* case as applying a "weight of the contacts" test. If a declaratory judgment action for patent invalidity can be said to arise in more than one district, the *Leroy* analysis applies.

dismissal of the related federal question puts the Court in the position of trying only the state tort claims. However, the Court recognizes that resolution of the state tort claims is, to some extent, dependent upon whether the CBS "Ettlinger" patent is valid. Therefore, it would be inappropriate for the Court to hear the state tort claims until the federal claim is resolved in an appropriate district. To try the state claims now would "bootstrap" the federal claim into a jurisdiction where venue has not been appropriately established. Therefore, the Court has no choice but to stay proceedings on the state court claims until the declaratory judgment action for patent invalidity is resolved.

Of course, this result is not entirely satisfactory to the Court because all of plaintiffs' claims arise out of the same events. In the interest of conserving scant judicial resources, these claims should be tried together, but only in a district where venue is proper over the federal claim. The state tort claims may then be joined in that district as pendent claims.[8]

Therefore, the Court dismisses Count II of the complaint, the declaratory judgment action for patent invalidity, and stays consideration of the remaining counts of the complaint until resolution of the patent invalidity action takes place in an appropriate forum. Additionally, in the interest of conserving judicial resources, if the patent action is brought in another forum, this Court will entertain a motion from either party to transfer the pendent state claims to that forum under 28 U.S.C. § 1404(a).

Moreover, in light of the fact that the state tort claims are so integrally related to the patent action, plaintiffs are ordered to notify the Court within 60 days of the date of this Order that they have filed their action for patent invalidity in an appropriate forum. If said notice is not received within 60 days, the state tort claims will be dismissed for lack of prosecution pursuant to Local Rule 21.

8. When a case involves a federal and a nonfederal claim, if they amount to only one cause of action, proper venue *as to the federal ground* will support adjudication of both grounds.

*Attorney's Fees*

■■■ Defendants assert they are entitled to an award of attorney's fees under Rule 11, Fed.R.Civ.P. Attorney's fees are authorized by Rule 11 when the pleadings filed in an action are (1) not well grounded in fact, (2) not warranted by current law or by a good-faith argument for modification of current law, or (3) interposed for any improper purpose. Rule 11, Fed.R.Civ.P.

In this case, defendants have not specified any basis under Rule 11 for their claim of entitlement to attorney's fees. Defendants assert only that plaintiffs' choice of the District of New Hampshire was "clearly erroneous" under the authority of *Howard v. Boston Five Cents Savings Bank*, No. 87–157–L, slip op. at 2–3 (D.N.H. August 11, 1987) [Available on WESTLAW, 1987 WL 39659], in which this Court awarded attorney's fees in a change of venue action because the plaintiff had conceded that venue was improper in the district, thereby rendering her choice of the New Hampshire forum "clearly erroneous". *Id.* at 1. No such concession was made in the instant case, and *Howard* is therefore inapposite.

Under Rule 11, the Court must inquire whether the party or his counsel "should have known that his position is groundless." *District 8, International Assoc. of Machinists v. Clearing*, 807 F.2d 618, 622 (7th Cir.1986) (quoting *Coleman v. CIR*, 791 F.2d 68, 71 (7th Cir.1986)). Here, plaintiffs successfully asserted jurisdiction over defendants CBS and Eslinger & Pelton. The plaintiffs' failure to establish jurisdiction over Laurence Tisch and to establish venue in New Hampshire was not because their arguments were meritless, but was because the facts they alleged were insufficient to sustain their burden of proof. Therefore, the Court finds that an award of attorney's fees to defendants is not required here by Rule 11.

In summary, defendants' motion to dismiss for lack of personal jurisdiction (document no. 4) is granted as to defendant

*Beattie, supra*, 756 F.2d at 100 (citing 1 J. Moore, *Moore's Federal Practice* ¶ 0.140[5] (2d ed. 1984)).

Laurence Tisch and is denied as to defendants CBS and Eslinger & Pelton. The Court dismisses Count II of the complaint for improper venue and stays consideration of the remaining counts of the complaint until resolution of the declaratory judgment action for patent invalidity. Plaintiffs are ordered to notify the Court within 60 days of the date of this Order that they have filed their action for patent invalidity in an appropriate forum, or the remaining counts of the complaint will be dismissed for lack of prosecution pursuant to Local Rule 21.

SO ORDERED.