Calypso v. DanaSoft                     CV-94-578-M    04/25/95
            UNITED STATES DISTRICT COURT FOR THE
                  DISTRICT OF NEW HAMPSHIRE


Calypso Software Systems, Inc.,
      Plaintiff,

      v.                                      Civil No. 94-578-M

DanaSoft, Inc. and Michael D. Pierce,
      Defendants.


                        O R D E R


      Plaintiff, Calypso Software Systems, Inc. ("Calypso"),

brings this petition for declaratory judgment, injunctive relief,

and damages against DanaSoft, Inc. and its president, Michael D.

Pierce (collectively, "DanaSoft").  Although Calypso originally

filed this suit in the Hillsborough County (New Hampshire)

Superior Court, DanaSoft removed it pursuant to 28 U.S.C. §1441

et seq.  Jurisdiction is based upon diversity of citizenship and

an amount in controversy alleged to be in excess of $50,000.00.

28 U.S.C. §1332(a).  Pending before the court is DanaSoft's

motion to dismiss for lack of personal jurisdiction.

Fed.R.Civ.P. 12(b)(2).

## Factual Background.

Calypso is a New Hampshire corporation with a principal place of business in Manchester, New Hampshire. Calypso develops and sells computer software. DanaSoft is a Delaware corporation with a principal place of business in the Commonwealth of Virginia. Michael Pierce, president of DanaSoft, is a Virginia resident. DanaSoft is not registered to do business in New Hampshire and maintains no offices or agents in this state.

Calypso's petition alleges that it developed a software product known as "Maestrovision," which is intended to assist companies with systems management across a computer network. As part of its development of Maestrovision, Calypso also claims to have developed "NLM," software designed to support Maestrovision's use on Novell's Netware operating systems. Calypso asserts that although it had discussions with DanaSoft regarding the possibility of jointly developing NLM, it actually created NLM independently, without the benefit of any assistance, information, or source code from DanaSoft. Calypso also alleges that, by letter dated October 3, 1994, DanaSoft threatened to file suit and issue a press release announcing the suit, unless Calypso agreed to pay Danasoft royalties for the NLM software.

2

Calypso claims DanaSoft has submitted itself to the jurisdiction of the courts of this state by having transacted business in New Hampshire, consisting of directing telephone calls, electronic mail, and written correspondences to Calypso's office in Manchester. Calypso also alleges that DanaSoft contacted Cabletron, Inc., a corporation located in New Hampshire and the only reseller of Calypso products, and informed Cabletron that: (i) Calypso engages in "under-handed business practices"; (ii) DanaSoft plans to sue Calypso for monies owed to it in connection with the development of NLM; and (iii) NLM is based upon source code developed by DanaSoft and is, in fact, a DanaSoft product.

Calypso further claims that its business relationship with Cabletron has been damaged by DanaSoft's alleged conduct and that additional damage will occur if DanaSoft is not enjoined from issuing its threatened press release. Finally, Calypso asserts that Cabletron markets certain DanaSoft products and that DanaSoft has entered into an agreement with Cabletron to "develop a wholly independent product to be used, and which is currently being used, with Cabletron's Spectrum product." Affidavit of Janet Drigian (Calypso Director of Operations) at para. 29.

3

DanaSoft says that its only written communication to New Hampshire was the October 3, 1994, letter from Pierce to Calypso, stating DanaSoft's "intention to prevent the shipment of any software relating to the management of Novell File Servers" and to "begin issuing press releases announcing its pending actions against Calypso Software."  DanaSoft denies ever having contacted Cabletron.  It concedes, however, that Pierce did receive two calls from a Cabletron employee, after Calypso initiated this proceeding, inquiring into the nature of the dispute between DanaSoft and Calypso.  DanaSoft contends that the court lacks personal jurisdiction, because neither it nor Pierce has had sufficient contacts with the State of New Hampshire to justify the exercise of long-arm personal jurisdiction over them.  For the reasons set forth below, the court agrees that it lacks personal jurisdiction over the defendants.

**Standard of Review.**

It is well established that in a diversity case the court's personal jurisdiction over a nonresident defendant is governed, at least in part, by the forum state's long-arm statute. Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell, Partnership v. Medfit Int'l, Inc., 982 F.2d 686, 690 (1st Cir. 1993).  And,

4

when personal jurisdiction is contested, the plaintiff bears the burden of establishing that jurisdiction.  <u>Kowalski v. Doherty, Wallace, Pillsbury & Murphy</u>, 787 F.2d 7, 8 (1st Cir. 1986).  The court will construe allegations of jurisdictional facts in the plaintiff's favor, <u>Buckley v. Bourdon</u>, 682 F.Supp. 95, 98 (D.N.H. 1988), and, if the court proceeds based upon the written submissions of the parties, without an evidentiary hearing, the plaintiff need only make a prima facie showing that jurisdiction exists.  <u>Kowalski</u>, 787 F.2d at 8; <u>Boit v. Gar-Tec Products, Inc.</u>, 967 F.2d 671, 674-75 (1st Cir. 1992).  Nevertheless, plaintiff's demonstration of personal jurisdiction must be based upon specific facts set forth in the record in order to defeat defendant's motion to dismiss.  And, "in reviewing the record before it, a court `may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment.'" <u>VDI Technologies v. Price</u>, 781 F.Supp. 85, 87 (D.N.H. 1991) (quoting <u>Lex Computer & Management Corp. v. Eslinger & Pelton, P.C.</u>, 676 F.Supp. 399, 402 (D.N.H. 1987) (citation omitted).

Before a court may exercise personal jurisdiction over a non-resident defendant, the plaintiff must make two showings:

5

(i) the forum state's long-arm statute confers jurisdiction over the defendant, and (ii) the constitutional due process standard is met (by establishing that the defendant has sufficient "minimum contacts" with the forum state). Kowalski, 787 F.2d at 9-10. As this court has previously noted, RSA 510:4, the New Hampshire long-arm statute "provides jurisdiction over foreign defendants to the full extent that the statutory language and due process will allow. Therefore, the proper inquiry . . . focuses on whether jurisdiction comports with federal constitutional guarantees." Estate of Mullen by Mullen v. Glick, No. 94-377-L, 1994 U.S. Dist. LEXIS 16020 (D.N.H. November 3, 1994) (quoting Phelps v. Kingston, 130 N.H. 166, 177 (1987)). Likewise, New Hampshire's corporate long-arm statute authorizes jurisdiction over foreign corporations to the full extent permitted by federal law. McClary v. Erie Engine & Mfg. Co., 856 F.Supp. 52, 54 (D.N.H. 1994). Stated another way, New Hampshire's individual and corporate long-arm statutes are coextensive with the outer limits of due process protection under the federal constitution. Accordingly, the court's "proper inquiry . . . focuses on whether jurisdiction comports with federal constitutional guarantees." Mullen, supra, at *6; see also McClary, supra, at 52.

6

## Discussion.

A.  <u>The State Long-Arm Statute - Jurisdiction Over Pierce</u>.

With regard to jurisdiction over non-resident individuals, New Hampshire law provides, in pertinent part:

> I.  Jurisdiction.  Any person who is not an inhabitant of this state and who, in person or through an agent, transacts any business within this state, commits a tortious act within this state, or has the ownership, use or possession of any real or personal property situated in this state subjects himself, or his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from or growing out of the acts enumerated above.

N.H. RSA 510:4, I.  The pleadings suggest (and Calypso does not claim otherwise) that neither Pierce nor DanaSoft has the ownership, use, or possession of any real or personal property in this state.  Nor has Calypso alleged that Pierce or DanaSoft committed a tort in New Hampshire.[1]  Accordingly, in examining

_____

[1]  Even construing Calypso's allegations broadly and considering whether the October 3, 1994, letter constitutes a sufficient basis upon which the court might exercise personal jurisdiction, the facts as they appear on the record are insufficient to warrant a finding of jurisdiction.  <u>See, e.g.</u>, <u>Talus Corporation v. Browne</u>, 775 F.Supp. 23, 27-28 (D.Me. 1991) ("Case law does not support the applicability of a state's long-arm statute regarding tortious conduct where Defendant merely has sent a notice-of-infringement letter to Plaintiff in the forum state . . ..").  There is no evidence that Danasoft contacted (either orally or in writing) any of Calypso's customers or made any disparaging or potentially defamatory statements.  <u>Cf</u>.  <u>Lex Computer & Management Corp. v. Eslinger & Pelton, P.C.</u>, 676

7

whether N.H. RSA 510:4 confers personal jurisdiction over Pierce, the court's focus is necessarily limited to the question of whether Pierce's conduct, as alleged by Calypso, constitutes the "transaction of business" in New Hampshire and, if so, whether Calypso's cause of action arises from or relates to that business.

In that regard, Calypso has failed to sustain its burden of demonstrating that Pierce "transacts business" in New Hampshire. The October 3, 1994, letter and the telephone conversations and facsimile transmissions between Pierce and Calypso do not constitute the transaction of business under the statute and are, without more, insufficient to confer personal jurisdiction over DanaSoft. See e.g., Fielder v. First City Nat. Bank, 807 F.2d 315, 317-18 (2d Cir. 1986) (discussing cases in which courts have held that telephone contacts not involving visits or consultations in the jurisdiction are insufficient to confer personal jurisdiction); U.S. Theatre Corp. v. Gunwyn/Lansburg Ltd. Partnership, 825 F.Supp. 594, 595 (S.D.N.Y. 1993) ("Transacting business under the New York long-arm statute has

_____

F.Supp. 399, 402-03 (D.N.H. 1987) (defendants sent allegedly defamatory letters to out-of-state customers of plaintiff, with an adverse impact upon plaintiff in New Hampshire).

8

been interpreted to require a certain quality, rather than a specific quantity, of contacts with the forum.  Telephone and mail contacts only provide a basis for jurisdiction when the defendant projected himself into New York in such a manner that he purposefully availed himself of the benefits and protections of its laws.") (citations omitted).

Calypso concedes that its communications with Pierce and DanaSoft related to "unsuccessful attempts to jointly develop a satisfactory NLM."  Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss, at 4-5.  According to Calypso, it never entered into any contractual relationship with Pierce or DanaSoft and, ultimately, it developed the NLM without any input or assistance from Pierce or DanaSoft.  Without more, Pierce's conduct in this regard is insufficient to confer personal jurisdiction.  Cf. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479 (1985) ("we have emphasized the need for a `highly realistic' approach that recognizes that a `contract' is `ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.'  It is these factors -- prior

9

negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing -- that must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum."). Here, the parties apparently never even reached the "intermediate step" of entering into a contract.

Moreover, Calypso's claim that Cabletron distributes DanaSoft's products is likewise insufficient to confer personal jurisdiction over Pierce (or DanaSoft). Calypso has not alleged nor has it referenced any facts from which it could be found that Pierce or DanaSoft "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers" in New Hampshire. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298 (1980); see Hugel v. McNell, 886 F.2d 1,4 (1st Cir. 1989) (noting that under the "stream of commerce" theory, courts must focus on the acts of the non-resident defendant to see if the defendant has a "substantial connection" with the forum state to support an assertion of personal jurisdiction) cert. denied, 494 U.S. 1079 (1990); see, e.g., Kibby v. Anthony Industries, Inc., 123 N.H. 272, 274-75 (1983) ("Although the statute provides a broad basis for the exercise of

in personam jurisdiction over persons transacting business within the state, it requires that a cause of action against a non-resident party transacting business here arise from or grow out of the transaction of that business.").  Nor has Calypso shown how this litigation relates to or arises from Pierce's (or DanaSoft's) relationship, if any, with Cabletron.

Simply stated, Calypso has failed to assert facts from which the court might reasonably infer that Pierce "transacts business" within the State of New Hampshire or that Calypso's claims "aris[e] from or grow[] out of" Pierce's alleged business transactions in this state.  And, even if the court were persuaded that Calypso had met its burden of demonstrating the applicability of New Hampshire's broadly construed long-arm statute, Pierce's contacts with New Hampshire are, as discussed more fully below, insufficient to satisfy the requirements of due process.  Boit, 967 F.2d at 675 ("To defeat a motion to dismiss . . . the plaintiff must make the showing [of facts essential to personal jurisdiction] as to every fact required to satisfy `both the forum's long-arm statute and the due process clause of the Constitution' . . . .  The `plaintiff must go beyond the pleadings and make affirmative proof.'")  (citations omitted).

11

B.   The State Long-Arm Statute - Jurisdiction Over Danasoft.

Chapter 510:4 of the New Hampshire Revised Statutes Annotated does not govern the exercise of jurisdiction of non-resident corporate defendants.  McClary v. Erie Engine & Mfg. Co., 856 F.Supp. at 54-55.  Instead, the court must look to New Hampshire's recently amended business corporations act, N.H. RSA 293-A:15.10.  As this court (Devine, J.) noted in McClary, supra, by amending the long-arm provisions of the business corporations act, the New Hampshire legislature "intended RSA 293-A:15.10 to authorize jurisdiction over foreign corporations to the full extent allowed by federal law."  Id., at 55.  Accordingly, because the corporate long-arm statute, like the individual long-arm statute, is coextensive with the outer limits of federal due process, "the traditional two-part personal jurisdiction inquiry collapses into the single question of whether the constitutional requirements of due process have been met."  Id., at 55.  As discussed below, the court finds that Danasoft does not have sufficient "minimum contacts" with the State of New Hampshire to warrant a finding that this court has jurisdiction over it.

C.   Due Process Analysis.

The court must engage in a two-step analysis to determine whether exercise of personal jurisdiction over DanaSoft would comport with the requirements of due process: first, does DanaSoft have "minimum contacts" with New Hampshire and, second, would the assertion of personal jurisdiction over DanaSoft offend traditional notions of fair play and substantial justice. Lex Computer, 676 F.Supp. at 404 (citing International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). "The constitutional touchstone of the determination whether an exercise of personal jurisdiction comports with due process remains whether the defendant purposefully established `minimum contacts' in the forum State." Ashai Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 108-09 (1987) (internal quotations omitted). A party establishes "minimum contacts" with the forum state when he or she "purposefully directs" activities to residents of the forum state and the subject litigation relates to injuries which "arise out of or relate to" those activities. Burger King Corp. v. Rudzewicz, 471 U.S. at 472-76. Moreover, to the extent that a party has "minimum contacts" with the forum state, they must be the product of that party's conduct; minimum contacts cannot be established through the conduct of an independent third party. World-Wide Volkswagen, 444 U.S. at 286.

13

And finally, minimum contacts with the forum state are not established through random, isolated or fortuitous acts of the non-resident party. Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984).

Here, the totality circumstances fail to establish: (i) that the underlying litigation relates to or arises from DanaSoft's New Hampshire activities; or (ii) that DanaSoft purposefully availed itself of the privilege of conducting activities in New Hampshire; or, ultimately (iii) that the exercise of personal jurisdiction over DanaSoft would be fair and reasonable. United Electrical Workers v. 163 Pleasant Street Corp., 960 F.2d 1080, 1089 (1st Cir. 1992). Having reviewed the alleged conduct of DanaSoft on the record before it, the court concludes that it did not purposefully avail itself of the privileges of conducting business in New Hampshire and finds that DanaSoft's contacts with New Hampshire are "random, isolated and fortuitous." Keeton, 465 U.S. at 774. As the Seventh Circuit has noted, "personal jurisdiction over nonresidents of a state is a quid for a quo that consists of the state's extending protection or other services to the nonresident. . .." Cote v. Wadel, 796 F.2d 981, 984 (7th Cir. 1986). Here, Calypso has failed to allege such a

14

quid pro quo which would support this court's exercise of personal jurisdiction.

That Cabletron (a company located in New Hampshire) contacted DanaSoft and inquired into the status of pending litigation with Calypso is precisely the type of isolated and fortuitous contact with the forum state referenced in Keeton, supra. And, perhaps even more critically, DanaSoft's communication with Cabletron about its dispute with Calypso occurred after Calypso had already initiated this proceeding. The court cannot base an exercise of personal jurisdiction upon a non-resident party's conduct occurring after the alleged cause of action arose. See, e.g., Steel v. United States, 813 F.2d 1545, 1549 (9th Cir. 1987) ("courts must examine the defendant's contacts with the forum at the time of the events underlying the dispute when determining whether they have jurisdiction.") (emphasis added); Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co., 907 F.2d 911, 913 (9th Cir. 1990) (in determining whether the defendant has "minimum contacts" with the forum state, "[o]nly contacts occurring prior to the event causing the litigation may be considered.") (emphasis added); Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop, 812 F.Supp. 1139, 1147

15

(D.Kan. 1993) ("The contacts [with the forum state] accumulated after the cause of action arose . . . To provide a basis for specific jurisdiction, the cause of action must arise from the contacts in question."); aff'd, 17 F.3d 1302 (10th Cir. 1994); Johnson v. Summa Corp., 632 F.Supp. 122, 124-25 (E.D.Pa. 1985) ("In determining whether the cause of action `arose from' a defendant's activities in the forum state, a court cannot consider those contacts taking place after the date on which the alleged cause of action arose.").

## Conclusion.

Having examined Pierce's and DanaSoft's contacts with the State of New Hampshire as alleged on the record, the court concludes that they are insufficient to satisfy the due process requirements of "minimum contacts;" defendants' contacts with the State of New Hampshire, as alleged by Calypso, are too isolated, fortuitous, and unrelated to this litigation to warrant the conclusion that defendants should reasonably have anticipated being haled into court here. World-Wide Volkswagen, 444 U.S. at 297. Stated simply, the exercise of personal jurisdiction over defendants would run afoul of traditional notions of fair play and substantial justice. International Shoe Co. v. Washington,

16

326 U.S. 310, 316 (1945).  Accordingly, the court holds that it lacks personal jurisdiction over the defendants.  Defendants' motion to dismiss (document no. 3) is granted.


        SO ORDERED.


                                    _____
                                    Steven J. McAuliffe
                                    United States District Judge

April 25, 1995

cc:   Arnold Rosenblatt, Esq.
      Russell F. Hilliard, Esq.

17