Environamics v. Thelco                    CV-96-068-M    08/26/96

UNITED STATES DISTRICT COURT FOR THE
                      DISTRICT OF NEW HAMPSHIRE


Environamics Corporation,
     Plaintiff

     v.                                        Civil No. C-96-68-M

Thelco Corp.,
     Defendant.


                         O R D E R


     Environamics Corporation brings this diversity action

against Thelco Corp., seeking to recover damages it sustained as

a result of Thelco's alleged breach of contract.  Presently

before the court is Thelco's motion to dismiss for lack of

personal jurisdiction.


                      **Background.**

     Environamics is a Delaware corporation, with a principal

place of business in Hudson, New Hampshire.  It manufactures and

sells pumps and pump technology for use in industrial

applications, such as petrochemical plants, paper mills, and food

processing facilities.  It manufactures its products exclusively

in New Hampshire and sells those products primarily through a

series of distributors located throughout the country.  Thelco is

a Colorado Corporation, with its principal offices in Englewood, Colorado and Salt Lake City, Utah.

In the summer of 1994, Environamics and Thelco began discussing the possibility entering into a distribution agreement, under which Thelco would become the exclusive distributor of Environamics products in a number of western states (the "Agreement"). Allen LeBoeuf, the director of sales and marketing for Environamics, visited Thelco's Colorado office to explore Thelco's interest in the proposal and to examine its facilities. Thereafter, negotiations between the parties concerning the Agreement occurred by telephone, facsimile, mail, and overnight courier.

On August 13, 1994, prior to signing the Agreement, Thelco placed a blanket purchase order with Environamics for a number of its products. Subsequently, on August 31, 1994, the parties executed the Agreement, by which Thelco became an authorized distributor of Environamics products in Colorado, Montana, Wyoming, and Utah and portions of Nebraska, North Dakota, South Dakota, Nevada, and Idaho. Environamics then shipped approximately $147,000 worth of its products to Thelco. Although

Thelco made a partial payment for that shipment, an outstanding balance of roughly $144,500 remains unpaid. Thelco's non-payment for that shipment and its alleged breach of the Agreement form the basis of this action.

The Agreement provides that it will remain in effect until December 31, 1995, and annually thereafter, unless terminated in accordance with its provisions. It also provides that Thelco will dedicate a minimum of one "specialist" who will act as a salesperson exclusively for the Environamics product line and who will support Thelco's distribution sales force. Prior to entering into the Agreement, Thelco representatives never visited Environamics' facilities or entered the State of New Hampshire. After executing the Agreement, however, Thelco sent representatives to New Hampshire on two separate occasions (October 24-27 and May 8-12), to attend seminars given by Environamics designed to familiarize its distributors with the product line and fundamentals of pump design, installation, and operation.

Subsequently, on May 24, 1995, Thelco's president, Miles Carson, sent a letter to Robert Rockwood, president of

Environamics, notifying him that "[i]t appears to us at Thelco that the investment in time, sales and marketing effort necessary to bring such a new and progressive design to market is more than our small company can handle if in addition we are expected to maintain a sizeable inventory." Accordingly, Mr. Carson proposed that Thelco be permitted to continue as a distributor of Environamics' products, but be relieved of the Agreement's requirement to pay for the inventory which it is required to maintain (until, of course, that inventory is sold to a third party). Alternatively, Mr. Carson proposed that Thelco terminate its relationship with Environamics, ship the inventory back to New Hampshire, and pay a five percent (5%) restocking charge. By letter dated July 6, 1995, Environamics rejected both of Thelco's proposals.

## Standard of Review.

I. Generally.

It is well established that in a diversity case personal jurisdiction over a nonresident defendant is governed, at least in part, by the forum state's long-arm statute. Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell, Partnership v. Medfit Int'l, Inc., 982 F.2d 686, 690 (1st Cir. 1993). And, when

4

personal jurisdiction is contested, the plaintiff bears the burden of establishing that the court has such jurisdiction. Kowalski v. Doherty, Wallace, Pillsbury & Murphy, 787 F.2d 7, 8 (1st Cir. 1986).

Allegations of jurisdictional facts are construed in the plaintiff's favor, Buckley v. Bourdon, 682 F.Supp. 95, 98 (D.N.H. 1988), and, if the court proceeds based upon the written submissions of the parties without an evidentiary hearing, the plaintiff need only make a prima facie showing that jurisdiction exists. Kowalski, 787 F.2d at 8; Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 674-75 (1st Cir. 1992). Nevertheless, the plaintiff's demonstration of personal jurisdiction must be based on specific facts set forth in the record in order to defeat a defendant's motion to dismiss. And, "in reviewing the record before it, a court `may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment.'" VDI Technologies v. Price, 781 F.Supp. 85, 87 (D.N.H. 1991) (quoting Lex Computer & Management Corp. v. Eslinger & Pelton, P.C., 676 F.Supp. 399, 402 (D.N.H. 1987))

Before a court may exercise personal jurisdiction over a non-resident defendant, the plaintiff must show, first, that the forum state's long-arm statute confers jurisdiction over the defendant, and second, that the exercise of jurisdiction comports with constitutional due process standards (by establishing that the defendant has sufficient "minimum contacts" with the forum state). Kowalski, 787 F.2d at 9-10. New Hampshire's corporate long-arm statute, N.H. RSA 293-A:15.10, authorizes jurisdiction over foreign corporations to the full extent permitted by federal law. McClary v. Erie Engine & Mfg. Co., 856 F.Supp. 52, 54 (D.N.H. 1994).[1]

Stated another way, New Hampshire's corporate long-arm statute is coextensive with the outer limits of due process

---

[1] In McClary v. Erie Engine & Mfg. Co., 856 F.Supp. 52 (D.N.H. 1994), this court (Devine, J.) held:

> [T]he Legislature's elimination of the restrictive long-arm language contained in [the former statute] and its provision for the service of foreign corporations by mail demonstrate that it intended RSA 293-A:15.10 to authorize jurisdiction over foreign corporations to the full extent allowed by federal law. Because RSA 293-A:15.10 reaches to the federal limit, the traditional two-part personal jurisdiction inquiry collapses into the single question of whether the constitutional requirements of due process have been met.

Id., at 55.

protection under the federal constitution.  Accordingly, the court's "proper inquiry . . . focuses on whether jurisdiction comports with federal constitutional guarantees."  McClary, supra, at 52.

Before a court may exercise personal jurisdiction over a foreign defendant in a manner consistent with the Constitution, the plaintiff must demonstrate that the defendant has "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Helicopteros Nacionales De Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984).  And, before finding that a defendant has such "minimum contacts," the court must be satisfied that the defendant's conduct bears such a "substantial connection with the forum state" that the defendant "should reasonably anticipate being haled into court there."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473-75 (1985) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

II.  General v. Specific Jurisdiction.

A court may exercise either general or specific jurisdiction over a defendant.  "General jurisdiction exists when the

7

litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state."  United Elec. Workers v. 163 Pleasant Street Corp., 960 F.2d 1080, 1088 (1st Cir. 1992).  Environamics does not contend that Thelco engaged in "continuous and systematic activity" in New Hampshire, nor does it ask the court to exercise general jurisdiction over Thelco.  So, if the court may properly exercise personal jurisdiction over Thelco, it must be specific jurisdiction.

A court may exercise specific jurisdiction when the cause of action arises directly out of, or relates to, the defendant's forum-based contacts.  United Elec. Workers, 960 F.2d at 1088-89. In an effort to assist district courts in determining whether they might properly exercise specific jurisdiction, the Court of Appeals has formulated a three-part test:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state contacts.  Second, the defendant's in-state activities must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable.  Third,

8

the exercise of jurisdiction must, in light of the
Gestalt factors, be reasonable.

United Elec. Workers, 960 F.2d at 1089.


**Discussion.**

Here, plaintiff claims and the court is satisfied that the
following factors, when viewed in their entirety, satisfy the
three-part jurisdictional inquiry outlined by the court of
appeals: (i) Thelco knowingly established a long-term contractual
relationship with a New Hampshire corporation, which it knew
manufactured and sold its products exclusively in and from New
Hampshire; (ii) the Agreement expressly provides that it shall be
governed by, and interpreted in accordance with, the laws of New
Hampshire (See Burger King, 471 U.S. at 482); (iii) Thelco
purposefully directed numerous telephone, facsimile, and mail
communications to Environamics and into the State of New
Hampshire (See Burger King, 471 U.S. at 476; Sawtelle v. Farrell,
70 F.3d 1381, 1389-90 (1st Cir. 1995)); (iv) the Agreement
provides that Thelco will take shipment of all Environamics
products freight on board ("FOB") Hudson, New Hampshire and that
Thelco will assume all responsibility for losses and/or damage
that might occur during shipping (essentially, then, Thelco took

9

possession of all Environamics products it ordered <u>in New Hampshire</u>); (v) payments to Environamics under the Agreement are to be directed to its office in New Hampshire (<u>See</u> <u>Ganis Corp. of California v. Jackson</u>, 822 F.2d 194, 198 (1st Cir. 1987)); (vi) Thelco placed a purchase order for, and took shipment (FOB Hudson, New Hampshire) of, over $140,000 worth of Environamics products which were manufactured in New Hampshire; and (vii) Thelco sent four of its representatives to New Hampshire on two separate occasions to attend a series of multiple-day training seminars conducted by Environamics for the benefit of its distributors, and for the purpose of facilitating performance of its (Thelco's) contractual obligations.

Based upon the foregoing, it is clear that Thelco knowingly and purposefully availed itself of the privilege of conducting business in New Hampshire. <u>United Elec. Workers</u>, 960 F.2d at 1089-90. It is equally plain that this litigation (to enforce Thelco's obligations under the Agreement) arises from or relates to Thelco's contacts with this state. <u>Id</u>. Finally, in light of all of the factors discussed above, the exercise of <u>in personam</u> jurisdiction over Thelco is reasonable. <u>See</u> <u>Donatelli v. National Hockey League</u>, 893 F.2d 459, 465 (1st Cir. 1990)

10

(discussing the so-called "Gestalt factors" which a court should consider when determining whether the exercise of personal jurisdiction is appropriate).

In short, Environamics has made a prima facie showing that Thelco's conduct bears a sufficiently substantial connection with New Hampshire that it should reasonably have anticipated being haled into court in this forum to answer for its alleged breach of the Agreement. Thelco has established sufficient "minimum contacts with [New Hampshire] that the maintenance of the suit does not offend traditional notions of fair play and substantial justice," Helicopteros Nacionales De Colombia, 466 U.S. at 414, and therefore, the exercise of personal jurisdiction over Thelco comports with constitutional due process standards.

## Conclusion.

For the foregoing reasons, the court holds that it may, consistent with constitutional requirements of due process and fundamental notions of justice and fairness, exercise in personam jurisdiction over Thelco. Accordingly, Thelco's motion to dismiss (document no. 6) is denied.

11

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

August 26, 1996

cc:  Christopher Cole, Esq.
     Daniel P. Schwarz, Esq.
     Ellen F. McCauley, Esq.
     Laurin D. Quiat, Esq.