MA Bay Insurance v. Portland Water    CV-99-487-M    05/10/00
                    UNITED STATES DISTRICT COURT

                       DISTRICT OF NEW HAMPSHIRE


Massachusetts Bay Insurance Co.,
        Plaintiff

        v.                                Civil No. 99-487-M
                                          Opinion No. 2000 DNH 115
Portland Water District,
        Defendant


                            **O R D E R**


        Massachusetts Bay Insurance Company ("Mass Bay") originally

filed this declaratory judgment action in the New Hampshire

Superior Court (Rockingham County), seeking a judicial

declaration that it is not obligated to indemnify defendant,

Portland Water District ("PWD"), with regard to any damages that

might be awarded against PWD in an underlying state court tort

action.  PWD removed the case to this court and now moves to

dismiss it, asserting that the court lacks personal jurisdiction

over it.  See Fed. R. Civ. P. 12(b)(2).  Mass Bay objects.

## Standard of Review

When personal jurisdiction is contested, the plaintiff bears the burden of establishing that the court has such jurisdiction. See Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995); Kowalski v. Doherty, Wallace, Pillsbury & Murphy, 787 F.2d 7, 8 (1st Cir. 1986). Allegations of jurisdictional facts are construed in the plaintiff's favor, see Buckley v. Bourdon, 682 F.Supp. 95, 98 (D.N.H. 1988), and, if the court proceeds based upon the written submissions of the parties without an evidentiary hearing, the plaintiff need only make a prima facie showing that jurisdiction exists. See Kowalski, 787 F.2d at 8; Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 674-75 (1st Cir. 1992). Nevertheless, the plaintiff's demonstration of personal jurisdiction must be based on specific facts set forth in the record in order to defeat a defendant's motion to dismiss. See Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994). And, "in reviewing the record before it, a court 'may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary

judgment.'" <u>VDI Technologies v. Price</u>, 781 F.Supp. 85, 87 (D.N.H. 1991) (quoting <u>Lex Computer & Management Corp. v. Eslinger & Pelton, P.C.</u>, 676 F.Supp. 399, 402 (D.N.H. 1987)).

## Background

Mass Bay, a New Hampshire insurance company, entered into a contract with PWD to provide insurance coverage for certain specifically identified claims and losses. PWD is a quasi-municipal corporation chartered by the Maine legislature to provide wastewater and sewage treatment services to citizens in the greater Portland, Maine area. It is not registered to do business in New Hampshire, nor does it own any real or personal property in this state. It does not maintain any offices or employees in New Hampshire and says that it neither conducts nor solicits business here.

In 1995, PWD entered into a contract with Wheelabrator Clean Water Systems (not a party to this proceeding). Under the terms of that agreement, PWD agreed to pay Wheelabrator to "provide for

3

the transportation and processing of wastewater treatment plant residuals, called Biosolids." Biosolids Agreement between PWD and Wheelabrator (June 9, 1995), at 5 (Exhibit 1 to document no. 3). That agreement specifically contemplated that Wheelabrator would dispose of PWD's Biosolids in both Maine and New Hampshire. See Biosolids Agreement, at paras. 2.2(d) and 2.8.

Later that year, Wheelabrator is alleged to have transported and deposited toxic sludge (generated by PWD) on farm land located in New Hampshire. When a young man who lived near the farm died from respiratory problems, his estate and parents sued PWD and Wheelabrator in state court, alleging that their negligent and/or intentional conduct proximately caused the young man's death. See Marshall v. Portland Water District, et al., Docket No. 99-C-0045 (N.H. Sup. Ct.).

After being served in the underlying state action, PWD notified Mass Bay and, invoking the provisions of its insurance policy, demanded that Mass Bay provide it with a defense and, if

4

necessary, indemnification for any damages that might be awarded against it. Acting under a reservation of rights letter, Mass Bay hired counsel to defend PWD in that suit. Subsequently, through its counsel, PWD appeared before the state court. It does not appear that PWD challenged the state court's exercise of personal jurisdiction over it in that proceeding. That state litigation is still pending.

## Discussion

In support of its motion to dismiss, PWD alleges that it lacks sufficient contacts with this forum to permit the court to exercise personal jurisdiction over it. The court disagrees.

I. Legal Framework.

Before a court may exercise personal jurisdiction over a non-resident defendant in a diversity case, the plaintiff must show two things: first, that the forum state's long-arm statute confers jurisdiction over the defendant; and, second, that the exercise of jurisdiction comports with constitutional due process

5

standards (by establishing that the defendant has sufficient "minimum contacts" with the forum state).  See Kowalski, 787 F.2d at 9-10.  The New Hampshire individual long-arm statute, N.H. RSA 510:4, "provide[s] jurisdiction over foreign defendants to the full extent that the statutory language and due process will allow."  Phelps v. Kingston, 130 N.H. 166, 171 (1987).  See also Sawtelle, 70 F.3d at 1388.  Likewise, New Hampshire's corporate long-arm statute, N.H. RSA 293-A:15.10, authorizes jurisdiction over foreign corporations to the full extent permitted by federal law.  See McClary v. Erie Engine & Mfg. Co., 856 F.Supp. 52, 54 (D.N.H. 1994).

Stated another way, New Hampshire's individual and corporate long-arm statutes reach as far as constitutional due process limits will permit.  Accordingly, the court's two-step jurisdictional analysis collapses into a single inquiry: whether the exercise of personal jurisdiction over defendant would comport with federal constitutional guarantees.  See Sawtelle, 70 F.3d at 1388; McClary, 856 F.Supp. at 55.

Before a court may exercise personal jurisdiction over a foreign defendant in a manner consistent with the Constitution, the plaintiff must demonstrate that the defendant has "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). And, before concluding that a defendant has such "minimum contacts," the court must also be satisfied that the defendant's conduct bears such a "substantial connection with the forum state" that the defendant "should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473-75 (1985) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

II.  General vs. Specific Jurisdiction.

A court may exercise either general or specific jurisdiction over a defendant. "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in

7

continuous and systematic activity, unrelated to the suit, in the forum state." United Elec. Workers v. 163 Pleasant Street Corp., 960 F.2d 1080, 1088 (1st Cir. 1992). See also Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999). Mass Bay does not contend that PWD engaged in "continuous and systematic activity" in New Hampshire, nor does it ask the court to exercise general jurisdiction over PWD. Accordingly, if the court may properly exercise personal jurisdiction over this defendant, it must be specific jurisdiction.

A court may exercise specific jurisdiction when the cause of action arises directly out of, or relates to, the defendant's forum-based contacts. See United Elec. Workers, 960 F.2d at 1088-89. In an effort to assist district courts in determining whether they might properly exercise specific jurisdiction, the Court of Appeals has formulated a three-part test:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state contacts. Second, the defendant's in-state

8

activities must represent a purposeful availment of the
privilege of conducting activities in the forum state,
thereby invoking the benefits and protections of that
state's laws and making the defendant's involuntary
presence before the state's courts foreseeable. Third,
the exercise of jurisdiction must, in light of the
Gestalt factors, be reasonable.

Id., at 1089. See also Phillips Exeter, 196 F.3d at 288.

III. Personal Jurisdiction over PWD.

In this case, each of the three factors identified by the
court of appeals counsels in favor of exercising personal
jurisdiction over PWD. This proceeding plainly "arises out of"
PWD's contacts with this forum. See generally Ticketmaster-New
York, Inc. v. Alioto, 26 F.3d 201, 206 (1st Cir. 1994) ("For our
part, we think it significant that the constitutional catch-
phrase is disjunctive in nature, referring to suits 'arising out
of, or relating to,' in-forum activities. We believe this added
language portends added flexibility and signals a relaxation of
the applicable standard.") (emphasis in original) (citation
omitted). It is equally evident that PWD has purposefully

9

availed itself of the privileges and protections afforded by New Hampshire law.

First, PWD arranged to dispose of its waste (through Wheelabrator) in New Hampshire.  And, as a result of that conduct, it has been sued (and appeared) in a New Hampshire state court.  Specifically, it has been charged with having disposed of toxic waste on farm land in this forum, proximately causing the death of a New Hampshire citizen.

Additionally, PWD has demanded that its New Hampshire insurance carrier, Mass Bay, provide it with a defense, in New Hampshire, and, if necessary, indemnification with regard to that underlying state court suit.  That demand, in turn, prompted Mass Bay to seek a judicial declaration of its obligations under the policy PWD purchased from it.  To be sure, the mere act of contracting with a New Hampshire insurance company would not, alone, automatically establish sufficient minimum contact with this forum to warrant the exercise of personal jurisdiction over

a foreign defendant.  See, e.g., Burger King, 471 U.S. at 478.

Here, however, that contract plainly contemplates that Mass Bay

would provide coverage to PWD in New Hampshire and PWD has

invoked that coverage, and made demand that its interests in New

Hampshire be defended.

Thus, this case involves more than merely the interpretation

of an insurance contract formed in Maine and an insured with no

contacts with this forum.  Instead, this declaratory judgment

action arises directly out of PWD's having allegedly disposed of

toxic waste in this forum, its having been named as a defendant

in the underlying state tort action, and Mass Bay's desire to

obtain a judicial determination of its obligations, if any, to

provide PWD with a defense in this state and indemnify it for any

damages it must pay in the pending tort action.  See, e.g.,

United Services Automobile Ass'n v. Cregor, 617 F.Supp. 1053,

1055-56 (N.D. Ill. 1985) (concluding that court could exercise

personal jurisdiction over defendants in declaratory judgment

action concerning insurance coverage because that dispute

"relates to" and "lies in the wake of" defendants' in-state activities, which were the subject of the underlying lawsuit in which defendants invoked the protections provided by their insurance policy). See also St. Paul Surplus Lines Ins. Co. v. International Playtex, Inc., 777 P.2d 1259, 1264-65 (Kan. 1989) ("It was not error for the trial court to find that the declaratory judgment action was sufficiently connected to the sale of Playtex products in Kansas to warrant personal jurisdiction over Playtex. . . . [I]f it were not for the sale of Playtex products in Kansas, resulting in the death of a Kansas resident [and the subject of underlying state court litigation], there would be no dispute between Playtex and its insurers.").

The same facts compel the conclusion that PWD has availed itself of the privileges and protections afforded by New Hampshire law, by disposing of its waste in New Hampshire and by purchasing (from a New Hampshire insurance company) insurance coverage it knew (or reasonably could have anticipated) would likely be invoked in New Hampshire, for services to be rendered

12

in New Hampshire.  And, PWD has, in fact, demanded that Mass Bay honor that contract by providing a defense and indemnification in the underlying state court litigation.

Notwithstanding PWD's argument to the contrary, one cannot reasonably interpret its contacts with New Hampshire as either random or isolated.  Nor can they properly be viewed as the result of the unilateral conduct of Wheelabrator.  See, e.g. Burger King, 471 U.S. at 475 (cautioning that the "purposeful availment" aspect of the jurisdictional inquiry ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" acts or as a result of the unilateral activity of a third party).  To the contrary, PWD's contract with Wheelabrator specifically contemplates that its waste will be deposited in New Hampshire.  That was PWD's intent, on a projected and systematic basis.  That potentially toxic waste generated by PWD was deposited on farm land in New Hampshire can hardly be said to have been

13

"fortuitous" or "random," nor was it solely a product of Wheelabrator's unilateral conduct. PWD agreed to it.

Finally, the so-called "Gestalt factors" also counsel in favor of exercising personal jurisdiction over PWD. The burden imposed on PWD by requiring it to appear in this forum, particularly in light of the fact that it is already appearing in the state court action, is minimal. As to New Hampshire's interest in this litigation, it is both self-evident and substantial. PWD is alleged to have committed a tort in this state, proximately causing the death of a New Hampshire citizen. In addition to appearing in the state court litigation, PWD has also demanded that its insurance carrier, a New Hampshire company, provide it with both a defense in this state and indemnification. New Hampshire's interest in providing the forum for resolving the parties' contract dispute, and its interest in seeing a prompt resolution to the insurance coverage issues relating to that suit, are therefore undeniable. Finally, some modest weight must also be given to Mass Bay's choice of forum

14

and its interest in obtaining convenient and effective relief.

See <u>Sawtelle</u>, 70 F.3d at 1395.

## Conclusion

PWD's contacts with this forum are not only purposeful, they are substantial:

1.  It contracted with Wheelabrator knowing that part of the contract (i.e., disposal of some of its biosolids) would be performed in this state.  Thus, it purposefully directed business activity (dumping of waste) at the State of New Hampshire (albeit through a third party).

2.  As a result of having arranged for the disposal of some of its waste in New Hampshire, PWD is alleged to have committed a tort in this forum: the plaintiffs in the underlying state court litigation claim that PWD's wrongful conduct played a substantial role in causing the death of a New Hampshire citizen.

3.  PWD appeared in the underlying state court proceeding, apparently without challenging the court's authority to exercise personal jurisdiction over it.  Thus, it is actively defending in New Hampshire.

4.  PWD contracted with a New Hampshire insurance company (Mass Bay), reasonably anticipating

15

that its insurance contract would likely call for at least partial performance in this forum; since New Hampshire is one of the few states with which PWD appears to have meaningful business contacts, it would be reasonable to presume that New Hampshire would be one of the states in which it might engage in conduct giving rise to the need to invoke the protections afforded by its insurance contract with Mass Bay.

5.   Beyond merely entering into an insurance contract that reasonably <u>anticipated</u> at least partial performance in New Hampshire, PWD has actually demanded that Mass Bay perform its (alleged) obligations under that contract in this forum, by providing a defense and indemnification in the underlying state court litigation.

In light of the foregoing, the court necessarily concludes that it can, consistent with New Hampshire's long arm statute and fundamental constitutional notions of due process, justice, and fair play, exercise personal jurisdiction over PWD. Its contacts with this New Hampshire are more than adequate to warrant the conclusion that PWD should reasonably have anticipated being haled into this forum to answer for allegedly wrongful conduct that proximately caused the death of a New Hampshire citizen. Consequently, having appeared in state court and invoked the

16

protections afforded by the Mass Bay insurance policy, it necessarily should have anticipated that it would be subject to the personal jurisdiction of this court, at least as it relates to Mass Bay's petition for declaratory judgment. Accordingly, PWD's motion to dismiss for lack of personal jurisdiction (document no. 3) is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

May 10, 2000

cc: Jeffrey A. Meyers, Esq.
    Gregory S. Clayton, Esq.